# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTIAN DUMONTET, Individually and on behalf of all those similarly situated, | Civil Action No. 1:21-cv-10361 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| UBS FINANCIAL SERVICES, INC., MATTHEW S. BUCHSBAUM, SCOTT M. ROSENBERG, GERARD COSTELLO and SONIA M. ATTKISS, | |
| Defendants. | |

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

SUMMARY ....................................................................................................................1

JURISDICTION AND VENUE.......................................................................................6

PARTIES ........................................................................................................................7

    A.   Plaintiff .............................................................................................................7

    B.   Defendants .........................................................................................................7

FACTUAL BACKGROUND ...........................................................................................8

    A.   Defendants Concealed the Fact That Expected
        Losses Would Dwarf Expected Gains ................................................................8

    B.   Defendants Fail to Disclose Material Conflicts of Interest...............................11

    C.   Defendants Concealed Material Facts About the Integrity of the YES Team...............12

CLASS ALLEGATIONS ...............................................................................................14

FIRST CAUSE OF ACTION
Breach of Fiduciary Duty (Against All Defendants).............................................16

SECOND CAUSE OF ACTION
Aiding and Abetting Breach of Fiduciary Duty (Against All Defendants)............................17

THIRD CAUSE OF ACTION
Negligent Misrepresentation and Omission (Against All Defendants) ...................................18

FOURTH CAUSE OF ACTION
Unjust Enrichment and Imposition of Constructive Trust (Against All Defendants) .............21

PRAYER FOR RELIEF ...............................................................................................22

## INTRODUCTION

Plaintiff Christian Dumontet ("Plaintiff"), on behalf of himself and all others similarly situated who chose accounts in UBS Financial Services, Inc.'s ("UBS" or the "Company") Yield Enhancement Strategy ("YES") program and suffered damages (the "Class"), alleges as follows against Defendants UBS, Matthew S. Buchsbaum ("Buchsbaum"), Scott M. Rosenberg ("Rosenberg"), Gerard Costello ("Costello"), and Sonia M. Attkiss ("Attkiss"), ("Individual Defendants" or the "YES Team"), based on personal knowledge as to Plaintiff and his own acts, and otherwise on information and belief, based on the investigations of his counsel which included a review of public statements and media reports, as well as other publicly available commentary, analysis, and information. Upon information and belief, Plaintiff believes that discovery will further support the allegations in this Class Action Complaint.

## SUMMARY

1.      The claims asserted herein are by Plaintiff and other customers of UBS who chose UBS YES accounts into which customers collectively pledged approximately $5.7 billion. The YES accounts posted substantial losses, starting in late December 2018.

2.      UBS and its corporate affiliates had been experiencing years of lagging results and poor performance in its investment banking business, causing UBS to embark on a turnaround plan that completely reoriented the Company's focus from investment banking to brokerage services under the guise of wealth management. That change in emphasis required UBS to generate significant advisory service fee income from its investment advisory client base to make up for the lower revenue generated from its investment banking activities. Like other wealth management companies, UBS maintained a fee structure pursuant to which it charged its clients fees to provide the financial advice they sought, fees that were assessed generally on the value of a client's

portfolio. Additional fee income could be generated if a client added capital to his or her account, or if the account increased in value.

3.       Defendants realized that another way to increase fee income was to devise a scheme that would enable UBS to charge a second set of fees on the same underlying assets. Accordingly, Defendants conceived of a plan to double-dip: to assess one fee on the underlying value of a client's portfolio and a second fee when those same securities were used as collateral for the YES accounts. YES advisory customers did not have to invest any money to choose a YES account. Rather, they only had to make the decision to designate a portion of their existing UBS investment portfolio as collateral for a margin account, called the "Mandate," that would be used for the YES program. Defendants represented that the purpose of the YES program was to generate an additional modest yield on the amount of the underlying portfolio that had been pledged in the Mandate.

4.       Unbeknownst to Plaintiff and the Class, the YES account was high-risk— in fact, far higher than what Defendants had represented when inducing them to choose a YES account and set up a substantial Mandate. Defendants called the account a "Yield Enhancement Strategy"—a benign name which concealed its material risks, which if known by customers would have doomed it from the beginning. No UBS customer would have made an informed decision to choose a YES account or pledge a substantial Mandate if they had known the actual risks and the facts which were misrepresented and omitted by Defendants in order to induce them to choose a YES account and pledge collectively approximately $5.7 billion as a Mandate.

5.       The YES strategy was supposed to be market-neutral and make money in flat or trending markets. When it worked, the YES program would only marginally enhance the yield on the underlying portfolio, but Defendants did not disclose the material fact that customers who

chose a YES account would expose their portfolios to far higher risk and losses compared to the potential returns. In order to induce UBS customers to choose a YES account and pledge substantial Mandates to it, Defendants concealed the most material piece of information that UBS customers would have wanted to know before making an informed decision—*i.e.*, that the expected losses during regularly occurring market conditions would dwarf the expected returns. YES was a money-losing account for UBS customers and none of them would have made the decision to choose a YES account and risk their existing portfolio assets had they known this fact.

6.  While YES was a money losing account for UBS customers, it was at the same time a windfall for Defendants, who collected more fees and charges when YES participants lost money than when they made money. Defendants had a material and direct, but undisclosed, conflict of interest with UBS customers who chose a YES account and set up a Mandate because Defendants' financial incentives in the YES program were in direct conflict with those of its customers. To further compound the risk, knowing that substantial losses could be expected during regularly occurring market conditions, Defendants designed the YES program to discourage exiting the program when the customer was suffering losses. As YES account holders were losing substantial amounts of money, Defendants knew that they would have difficulty exiting the program to stop their losses, while Defendants were continuing to collect fees upon fees. No UBS customer would have made an informed decision to choose a YES account and pledge the substantial collective Mandate of $5.7 billion if they had known about the existence of these material undisclosed conflicts of interest.

7.  Defendants were fiduciaries to Plaintiff and the Class. The UBS Client Relationship Agreement signed by every UBS "Individual Wealth Management Client," including Plaintiff and the Class, explicitly acknowledges that UBS has a fiduciary relationship with them:

**Your Relationship with Us**
UBS Financial Services Inc. is registered with the U.S. Securities and Exchange Commission (SEC) as a broker-dealer and an investment adviser, offering both brokerage and investment advisory services. . . .

**When we act as an investment adviser, we have a fiduciary relationship with you under the Investment Advisers Act of 1940. When we provide advice to you in your advisory account (including a recommendation to open an advisory account or to roll over assets or transfer assets from a retirement or other account to an advisory account), we are acting in our capacity as an investment adviser.**

8.      A financial adviser like UBS is a fiduciary whose duty is to serve the best interests of its customers, which includes an obligation not to subrogate its customers' interests to its own. An adviser must deal fairly with customers and prospective customers, seek to avoid conflicts with its customers and, at a minimum, make full disclosure of any material conflict or potential conflict. A customer relies upon such disclosures when selecting his or her own adviser and evaluating the adviser's business practices and conflicts on an ongoing basis. As a result, the disclosures that customers and prospective customers receive are critical to their ability to make informed decisions about whether to engage an adviser and, having engaged the adviser, to manage that relationship and chose to enter into specific accounts—in this case, whether to choose a YES account managed by the YES Team and whether to pledge a substantial Mandate from their existing assets, which unbeknownst to them put the Mandate amount at risk. Defendants breached their fiduciary duties to Plaintiff and the Class by misrepresenting and concealing these material risks and conflicts of interest which would have precluded any UBS customer from making an informed decision to choose a YES account.

9.      As fiduciaries, advisers like UBS and the YES Team must disclose all material information regarding any material conflicts posed by the fee structure and material risks to its customers' portfolios. In breach of their fiduciary duties, Defendants acted in their own best interests rather than those of Plaintiff and the Class.

10.     In addition, Defendants never disclosed to Plaintiff or other UBS YES customers the existence of legal proceedings against the YES Team, accusing them of stealing confidential information relating specifically to the YES program from their former employer, Credit Suisse. Such legal proceedings were material to the UBS' customers' understanding and evaluation of the integrity of the YES Team, which served as a fiduciary to Plaintiff and the Class. It was crucial for Plaintiff and the Class to evaluate the integrity of the YES Team members because they were about to entrust the YES Team with substantial assets in their YES accounts and Mandates. Defendants' concealment of this material fact relating to their integrity precluded Plaintiff and the Class from making an informed decision to choose a YES account managed and operated by the YES Team.

11.     In inducing Plaintiff and the Class to choose a YES account and pledge substantial Mandates, Defendants breached their fiduciary duties to Plaintiff and the Class by misrepresenting and failing to disclose to them known risks material to those decisions – specifically, the risk of substantial losses which were far greater than any positive returns to be gained from choosing a YES account; Defendants' conflict of interest in which Defendants' fees and charges increased substantially as its YES customers' losses increased substantially, placing their respective financial incentives in direct conflict; and concealing that the YES Team had been accused by their former firm, Credit Suisse, of stealing confidential customer information relating to the YES program, which impacted the integrity of the YES Team and was a material fact for UBS customers who were making the decision whether to entrust their Mandate amounts to the YES Team.

12.     Those material undisclosed risks known by Defendants manifested and materialized in Plaintiff's and the Class' YES accounts during periods of higher market volatility in late December 2018 and 2019, causing the value of their YES accounts to decline substantially. At the same time, Defendants benefitted unjustly by collecting fee income on top of fee income,

and additional margin fees once the Plaintiff's and the Class' portfolios incurred substantial deficits, at which time Defendants knew that it would be difficult for them to stop the losses by exiting the program, as it was designed.

13.     As a consequence of the undisclosed risks and conflicts, Defendants' efforts to recruit UBS advisory customers into choosing YES accounts were successful and generated substantial enrollments. At the height of the program, about 1,500 UBS advisory customers reportedly chose YES accounts and pledged about $5.7 billion in their YES account Mandates.

14.     Plaintiff and the Class have suffered the consequences of Defendants' breaches of fiduciary duty and negligent misrepresentations. In late December 2018, YES accounts suffered significant losses. Those losses continued to pile up in 2019 and eventually reached approximately 20% of the $5.7 billion advisory customer Mandates in the YES accounts, or approximately $1.2 billion. This suit seeks damages, restitution, disgorgement of ill-gotten gains, and other equitable remedies.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiff is of diverse citizenship from Defendants and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because among other things, the YES Team was located in this District at UBS Private Wealth Management, 299 Park Avenue, 25th Floor, New York, NY 10171, UBS is located in this District and a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

### A.   Plaintiff

17.     Plaintiff chose a Yes account, pledged a Mandate and suffered damages as a result thereof. Plaintiff filed a FINRA arbitration claim, but dismissed his claim on December 3, 2021, without receiving any discovery or confidential information or documents from UBS.

### B.   Defendants

18.     Defendant UBS, which offered the YES program to Plaintiff and the Class, is a subsidiary of UBS Group AG. UBS' headquarters are at 1285 Avenue of the Americas, New York, N.Y. 10019. UBS Group AG is a Swiss multinational investment bank and financial services company founded and based in Switzerland. Its American subsidiary, UBS Americas Holding LLC, through its subsidiaries, offers wealth management, asset management, and investment banking and advisory and brokerage services in the United States. The YES Team consists of Defendants Matthew S. Buchsbaum, Scott M. Rosenberg, Gerard Costello, and Sonia M. Attkiss, all of whom are Managing Directors of Wealth Management, UBS Private Wealth Management, and Michael Lorenzo, Director of Wealth Management, Senior Wealth Strategy Associate. UBS Private Wealth Management is part of UBS's Private Wealth Management division.

19.     As a registered investment advisor and fiduciary of its advisory customers such as Plaintiff and the Class, UBS is subject to federal and state rules and regulations that mandate it to adopt policies and procedures to ensure compliance with the applicable laws and regulations and, in particular, provide mandated disclosures to its customers. Such disclosure mandates require UBS to disclose to its customers all material facts about any legal event that is material to a client or prospective client's evaluation of the integrity of the adviser and its personnel. Further, UBS is required to make full disclosures to customers about the accounts it proposes or recommends to

such customers and may be subject to liability for misrepresentations and omissions regarding the accounts it offers, including any conflicts of interest with its customers.

20.     The Individual Defendants Buchsbaum, Rosenberg, Costello, and Attkiss were at all relevant times Managing Directors of Wealth Management at UBS and controlled and managed the YES accounts. Buchsbaum is described in the PMP Yield Enhancement Strategy Amendment to Advisory Relationship Agreement and Form ADV Disclosure Brochure in the "Key Person Risk" section as follows: "The Yield Enhancement Strategy is managed by Matthew Buchsbaum, Senior Portfolio Manager, and his team. The portfolio management of the strategy is dependent on Mr. Buchsbaum's skills and ability."

## FACTUAL BACKGROUND

### A.     Defendants Concealed the Fact That Expected Losses Would Dwarf Expected Gains

21.     Launching the YES accounts at UBS in 2016, Defendants represented in the YES marketing materials to UBS customers that YES was market-neutral and had generated monthly returns for 12 years that were uncorrelated with the stock and bond markets. Either the prior returns represented by UBS were false or the strategy implemented by the YES Team at UBS differed materially from the strategy it implemented at Credit Suisse. In either case, UBS and the YES Team knew but failed to disclose that UBS customers who chose a YES account would suffer substantial losses and that UBS would benefit from such losses at their expense.

22.     The YES Strategy was far from reliable, and Defendants knew that under certain circumstances – which have historically occurred with regularity – it would not only fail to work as they had represented, but would cause substantial losses. UBS did not disclose the structural defect of this strategy during times when the market experiences high volatility, nor did it disclose the magnitude of the losses Plaintiff and the Class should expect to suffer. Instead, it falsely

represented to prospective advisory customers that "[t]he strategy is transparent" by using misleading past performance from a YES program managed by the YES Team for its former employer, Credit Suisse, that created a false impression regarding the true risk exposure and the real measure of potential losses UBS advisory customers should have expected when they chose a YES account.

23.     UBS and the Individual Defendants induced Plaintiff and the Class to choose a YES account and pledge substantial amounts in their Mandates by falsely representing that the YES program was a modest risk, reasonable reward, fee-producing "strategy" designed to enhance the yield on their portfolio. Specifically, Defendants falsely represented that the YES program "seeks to limit exposure to significant upside or downside market moves" through "call and put protection;" provides "Upside & Downside Protection;" and "prepare[s] for unexpectedly volatile market conditions by purchasing both out-of-the-money call and put protection financed by premium generated from the sale of options."

24.     The following charts called "Yield Enhancement Sensitivity Under Different Equity Market Conditions" and "Explanation of Symbols and Phrases" were provided to Plaintiff and the Class in identical or virtually identical form to induce them to choose a YES account.

**Yield Enhancement Sensitivity Under Different Equity Market Conditions**

| | Sharp Downward Move | Trending Down | Flat | Trending Up | Sharp Upward Move |
|---|---|---|---|---|---|
| **Yield Enhancement** | ↓ | ↑ | ↑↑ | ↑ | ↓ |
| **Stock Portfolio** | ↓↓ | ↓ | ↔ | ↑ | ↑↑ |
| **Bond Portfolio** | ↑ | ↑ | ↔ | ↓ | ↓ |
| **Covered Call** | ↓↓ | ↔ / ↓ | ↑ | ↔ / ↑ | ↑ |

• Yield Enhancement Strategy performs well in trending or flat markets.*

## Explanation of Symbols and Phrases

In reference to previous slide's chart



↑↑   Scenario most likely for portfolio / strategy to generate positive return

↑   Scenario likely for portfolio / strategy to generate positive return

↔   Scenario for portfolio / strategy to generate minimal return

↓   Scenario likely for portfolio / strategy to generate negative return

↓↓   Scenario most likely for portfolio / strategy to generate negative return

• **Sharp Downward Move:** Less than -5% over a week
• **Trending Down:** Between -1% and -4% over 30 days
• **Flat:** Between -1% and 1% over 30 days
• **Trending Up:** Between 1% and 4% over 30 days
• **Sharp Upward Move:** More than 5% over a week

25.    While the charts represent the scenarios that are "likely" and "most likely" to generate negative returns, they omit the material fact of the *magnitude* of the "likely" and "most likely" negative returns. By failing to disclose the severity of losses Plaintiff and the Class should expect to suffer under the illustrated market conditions, Defendants effectively concealed the true risk of the YES program which was *the most important fact* that Plaintiff and the Class would want

to know before choosing a YES account. A risk disclosure which only discloses the *likelihood* of negative returns without disclosing the *magnitude* of those expected negative returns is wholly inadequate as a purported risk disclosure. In effect, Defendants failed to disclose that the expected positive returns would be dwarfed by the expected negative returns under market conditions which were expected to occur with regularity. Plaintiff and the Class would not have made the decision to choose a YES account or pledge substantial amounts of their portfolio assets as a Mandate if these risks, which were known by Defendants at the time, had been disclosed.

26.     UBS misrepresented the YES account and omitted material facts in identical or virtually identical documents provided to Plaintiff and all members of the Class, including, without limitation, the promotional brochure of the "Yield Enhancement Strategy-Portfolio Management Program," which listed the names of YES Team members Defendants Buchsbaum, Rosenberg, Attkiss and Costello on the first page; and the Amendment to Advisory Relationship Agreement; and Form ADV Disclosure Brochure, provided to and signed by Plaintiff and every member of the Class, in which they acknowledged that they relied on the documents provided to them by explicitly acknowledging that they read and understood the risks of the YES program described in those documents.

**B.      Defendants Fail to Disclose Material Conflicts of Interest**

27.     Defendants represented to UBS' existing customers that the option to open a YES account was a relatively safe, low-yield decision. The documents provided to Plaintiff and the Class in identical or virtually identical form to induce them to choose a YES account contained boilerplate, generic risk disclosures. For instance, UBS warned that YES account holders may "sustain large losses," but failed to explain in any meaningful detail how, when, to what extent, or in what circumstances those losses could occur, thus rendering such self-serving disclosures

11

meaningless and impossible to evaluate, particularly when customer losses fueled Defendants' substantial gains.

28.     Defendants' boilerplate "Conflict of Interest" disclosure was inadequate by only disclosing the following and omitting the material facts alleged herein about the YES fee structure and its consequences, to the detriment of Plaintiff and the Class:

> The Financial Advisor recommending the YES Strategy to you will receive a portion of the advisory fees you pay to UBS FS. That compensation to UBS FS and the Financial Advisor is higher than if the Financial Advisor recommended a strategy managed by a third party money manager. For clients where the Portfolio Managers on the YES Strategy are the same Financial Advisors on your other UBS FS assets, your Portfolio Manager/Financial Advisor will earn more compensation for recommending their own strategy than that of a third party money manager.

29.     Defendants misrepresented and failed to disclose that their gains increased as YES customers' losses increased, which could be expected to occur during regularly occurring market conditions. In effect, Defendants stood to gain from their customers' losses, putting their financial incentives in direct conflict with those of their customers, for whom they served as fiduciaries.

**C.     Defendants Concealed Material Facts
         About the Integrity of the YES Team**

30.     Defendants failed to disclose to Plaintiff and the Class material facts about a legal proceeding which called into question the integrity of the YES Team. In early 2016, the YES Team moved from Credit Suisse to UBS and brought with it a strategy they claimed to have successfully run since 2004. Thereafter, in the context of an unrelated compensation dispute between the YES Team and Credit Suisse, Credit Suisse initiated an internal investigation into circumstances related to its former employees' departure, according to court filings. Credit Suisse described the results of its investigation in court papers as follows:

> Credit Suisse discovered that Claimants had used their personal and Credit Suisse email accounts to steal substantial amounts of valuable confidential information relating to Credit Suisse's business and clients, apparently for use in their new jobs

at UBS. The **stolen documents** included confidential Credit Suisse performance analytics and related materials concerning a proprietary investment strategy offered to Credit Suisse clients (known as the "Yield Enhancement Strategy" or "YES") as well as confidential client account information, including investment strategies and account totals, for some Credit Suisse clients. *See In the Matter of the Application of Sonia Attkiss*, Index No. 645992/2017 (Supreme Ct. New York, New York County), Affirmation of Stephen M. Kramarsky.

31.     As a result of its findings, in 2017, Credit Suisse filed claims in private arbitration against the YES Team members for, among other things, breach of fiduciary duty and misappropriation of confidential information.

32.     Defendants never disclosed to Plaintiff or other UBS YES customers the existence of such legal proceedings against the YES Team accusing the YES Team of serious misconduct relating specifically to the YES program, despite the fact that such legal proceedings were clearly material to advisory customers' decisions to choose a YES account and pledge substantial Mandates and their evaluation of the integrity of the YES Team members, whom such advisory customers were about to entrust as fiduciaries with substantial assets in their YES Mandates.

33.     Defendants failed to disclose such material information to Plaintiff and the Class, despite having a duty to do so. Theft by an adviser or one of its executives reflects negatively on the integrity of the adviser and its management personnel and, therefore, is presumptively material to clients. Accusations of theft of confidential information involving an adviser are important to advisory customers for many reasons, including how such theft accusations may reflect upon the adviser's integrity and the effect it may have on the degree of trust and confidence a customer would place in the adviser. Such concealed facts were crucial to Plaintiff's and the Class' decision to choose a YES account and entrust their assets to the YES Team.

## CLASS ALLEGATIONS

34.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff asserts claims on behalf of himself and all other persons similarly situated. The Class consists of the following persons or entities:

> All UBS customers who chose a YES account and who suffered damages. Excluded from the Class are Defendants, their subsidiaries, agents and employees and members of their immediate families and YES account holders who are already subject to an arbitration finding or award.

35.     Plaintiff and the Class seek damages and to enjoin Defendants from engaging in the wrongful business practices alleged in this Complaint and to require Defendants to pay damages, make restitution and restore to the Class all funds wrongfully obtained through Defendants' misconduct alleged herein.

36.     Class treatment of these claims is appropriate because the members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably estimates that Class members number more than 1,500. The precise number of Class members entitled to relief and their addresses are unknown to Plaintiff but can easily be ascertained from UBS' records. Class members may be notified of the pendency of this action by electronic means, mail, publication, and/or other notice.

37.     There is a well-defined community of interest in the relevant questions of law and fact affecting putative Class members. Common questions of law and fact exist as to all Class members, and predominate over any questions solely affecting individual Class members, including but not limited to:

> a)      whether Defendants breached their fiduciary duties by engaging in the conduct described herein;
>
> b)      whether Defendants aided and abetted the breaches of fiduciary duty by the other Defendants;

14

c)      whether Defendants have been unjustly enriched at the expense of Plaintiff and the Class;

d)      whether Defendants made material misrepresentations and/or omissions to Plaintiff and the Class;

e)      the proper measure of monetary relief;

f)      whether Plaintiff and members of the Class have sustained harm; and

g)      whether Plaintiff and the Class are entitled to damages and/or equitable relief.

38.     Plaintiff's claims are typical of those of the absent Class members. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to, or that directly and irrevocably conflict with, the interests of other Class members. Plaintiff is willing and prepared to serve the putative Class in a representative capacity with all of the obligations and duties attendant thereto.

39.     Plaintiff has retained the services of counsel who are experienced in complex class action litigation and in particular, class actions involving investment and financial services matters. Plaintiff's counsel will adequately prosecute this action, and will otherwise assert, protect, and fairly and adequately represent Plaintiff and all absent Class members.

40.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a)      individual claims by all Class members would be impracticable as the costs of pursuit would far exceed what any individual class member has at stake;

b)      all individual Class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

15

c)      the concentration of litigation of these claims in one forum will achieve efficiency, consistency, and promote judicial economy; and

d)      the proposed Class is manageable.

41.      Therefore, class treatment of Plaintiff's claims is both appropriate and necessary.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty (Against All Defendants)

42.      Plaintiff repeats and incorporates the allegations above as if fully set forth herein.

43.      Defendants explicitly acknowledged that they were fiduciaries to Plaintiff and the Class. As a provider of financial services and a registered investment adviser at all times relevant herein, UBS and the YES Team are fiduciaries to Plaintiff and the Class and owe them the highest duties of loyalty, candor, due care and prudence in providing financial services and acting as an investment adviser on their behalf. As a fiduciary, Defendants have a continuing duty to act exclusively for the benefit of Plaintiff and the Class in the discharge of their investment management and advisory services.

44.      Plaintiff and the Class were fully dependent upon the Defendants' ability, skill, knowledge and goodwill for their decision to choose a YES account and pledge a Mandate amount. By virtue of their superior skill and knowledge, their exclusive control and oversight over the YES accounts, the fact that they had been entrusted by the Plaintiff and the Class with their money, Defendants are the fiduciaries of Plaintiff and the Class and have a special relationship of trust and confidence with Plaintiff and the Class.

45.      Defendants have breached their fiduciary duties to Plaintiff and the Class by engaging in the misconduct as alleged herein, including making material misrepresentations and omissions to induce Plaintiff and the Class to choose a YES account and pledge a Mandate.

Defendants committed these breaches in order to make more money for themselves at the expense of Plaintiff and the proposed Class.

46.     Plaintiff and the Class suffered damages directly caused by Defendants' misconduct which induced them to choose a YES account and pledge a Mandate.

47.     As a direct and proximate consequence of the Defendants' conduct as alleged herein, Plaintiff and the Class have suffered significant losses as a result of their choice of a YES account and pledge of a Mandate. Plaintiff and the Class have suffered damages in an amount to be determined at trial and also seek disgorgement of any undue and unjust gains of Defendants, as well as all other equitable relief deemed just and proper.

### SECOND CAUSE OF ACTION

**Aiding and Abetting Breach of Fiduciary Duty**
**(Against All Defendants)**

48.     Plaintiff repeats and incorporates the allegations above as if fully set forth herein.

49.     As alleged herein, the Defendants breached their fiduciary duties to Plaintiff and the Class.

50.     Each Defendant aided and abetted each other Defendant in breaching their fiduciary duties to Plaintiff and the Class by knowingly inducing and participating in a substantial way in the breaches of fiduciary duty, as alleged herein.

51.     As a direct result of each Defendant aiding and abetting the other Defendants' breaches of fiduciary duty, Plaintiff and the Class suffered damages in an amount to be determined at trial and also seek disgorgement of any undue and unjust gains of Defendants, as well as all other equitable relief deemed just and proper.

### THIRD CAUSE OF ACTION

**Negligent Misrepresentation and Omission**
**(Against All Defendants)**

52.     Plaintiff repeats and incorporates the allegations above as if fully set forth herein.

53.     Plaintiff and the Class specifically disclaim any allegations of fraud and allege only negligence.

54.     As set forth herein, each of the Defendants had a duty to Plaintiff and the Class, as a result of their special fiduciary relationship of trust and confidence, to give accurate information to Plaintiff and the Class when they induced them to choose a YES account and pledge a Mandate.

55.     UBS offered the YES accounts to Plaintiff and the Class and supervised and controlled the YES Team in its offering and management of the YES accounts. UBS owed Plaintiff and the Class fiduciary duties of candor, loyalty, due care and prudence.

56.     Each of the Individual Defendants, because of their management positions with UBS and their orchestration, direction, selling and overseeing the operation of the YES accounts, owed Plaintiff and the Class fiduciary duties of candor, loyalty, due care and prudence.

57.     The Individual Defendants, because of their positions with UBS, possessed the power and authority to control and did control the content and form of the information about the YES accounts provided to Plaintiff and the Class.

58.     Because of their positions with UBS and experience with the YES accounts, the Individual Defendants had access to material non-public information concerning the YES accounts and they knew the omitted and misrepresented adverse facts alleged herein.

59.     All Defendants possessed unique and specialized expertise and information concerning the YES accounts, including the material non-public information alleged herein. Such

information was unavailable to Plaintiff and the Class or only when or if Defendants chose to reveal it, which they did not.

60.     Defendants occupied a special position of confidence and trust such that Plaintiff's and the Class' reliance on their statements in the documents provided to them was reasonable. Defendants had a duty to speak truthfully and with care in these circumstances. Where the relationship is such that in morals and good conscience, Plaintiff and the Class had the right to rely on Defendants for accurate and correct information, their reliance was reasonable.

61.     Defendants made false and misleading representations and omissions of material fact, as alleged herein, that they should have known were incorrect.

62.     Defendants are liable for making material misrepresentations and omissions to Plaintiff and the Class because (1) Defendants had a duty, as a result of their special fiduciary relationship of trust and confidence with Plaintiff and the Class to give them correct information; (2) Defendants made false representations and omissions of material fact that they should have known were incorrect, materially misleading and omitted material facts; (3) the information Defendants disclosed and omitted in the representations made in identical or virtually identical form to Plaintiff and all members of the Class was known by Defendants to be desired by Plaintiff and the Class in order to make an informed decision about choosing a YES account and pledging a Mandate; (4) Plaintiff and the Class intended to rely and did rely and act upon Defendants' misrepresentations, which contained omissions of material fact; and (5) Plaintiff and the Class reasonably relied on them to their detriment.

63.     Among other things, as alleged herein, Defendants misrepresented and concealed from Plaintiff and the proposed Class the background and conduct of the YES Team, its conflict of interest with Plaintiff and the Class and the actual risks of the YES account.

64.     At all relevant times, Defendants had a duty to disclose to Plaintiff and the Class all facts material about the YES Team and the YES account so that they could make an informed decision to choose a YES account, including in any promotional and disclosure materials and agreements, which were provided to Plaintiff and every member of the Class in identical or virtually identical form.

65.     Such information was material to Plaintiff's and the Class members' decision to choose a YES account and their evaluation of the integrity of the YES Team and should have been disclosed to Plaintiff and the Class when they were induced to choose a YES account.

66.     Defendants had no reasonable grounds to believe that their misrepresentations and omissions concerning the YES accounts and the YES Team were accurate because the YES accounts and the YES Team were under their exclusive control. Defendants failed to exercise reasonable care in making these misrepresentations and omissions to Plaintiff and the Class.

67.     Defendants intended to induce Plaintiff and the proposed Class to rely on their misrepresentations and omissions concerning the YES accounts and the YES Team so that Plaintiff and the proposed Class would choose a YES account and they did rely on the YES disclosure documents and agreements provided to them.

68.     Defendants knew that Plaintiff and the Class desired the information supplied in their representations for a serious purpose, *i.e.*, to decide whether to choose a YES account.

69.     These misrepresentations and omissions were provided to Plaintiff and all members of the Class and relied upon by them. Plaintiff and every member of the Class signed a PMP Yield Enhancement Strategy Amendment to Advisory Relationship Agreement and Form ADV Disclosure Brochure, explicitly acknowledging that they "read and understood the terms and conditions of this Amendment and the risks associated with selection of the YES Strategy."

20

70.     Plaintiff's and the Class' specific reliance on Defendants' misrepresentations and omissions, as reflected in the documents provided to them in order to choose a YES account was justifiable in that Defendants, as fiduciaries, had an obligation to be truthful in their statements made to induce Plaintiff and the Class to choose a YES account.

71.     Because of the Defendants' exclusive control over information relating to the YES accounts, Plaintiff and the Class were required to acknowledge their reliance and understanding of the risks of the YES program contained in the documents provided by Defendants. Plaintiff and the Class would have been unable to discover the truth, regardless of any level of due diligence or independent research they might have conducted. There were no independent means of verification available to Plaintiff and the Class of the true facts regarding the YES accounts.

72.     Plaintiff and the Class intended to rely and act upon the information provided by Defendants about the YES accounts. Plaintiff and the Class reasonably relied on Defendants' misrepresentations and omissions to their detriment, namely, they decided to choose a YES account and as a result of their reliance, suffered damages.

73.     Plaintiff and the proposed Class have been substantially harmed by Defendants' misrepresentations and omissions.

74.     Plaintiff and the Class seek damages to redress their financial losses, and disgorgement of any undue and unjust gains of Defendants.

### FOURTH CAUSE OF ACTION

**Unjust Enrichment and Imposition of Constructive Trust**
**(Against All Defendants)**

75.     Plaintiff repeats and incorporates the allegations above as if fully set forth herein.

76.     All Defendants were enriched at the expense of Plaintiff and the Class in that they received benefits, commissions, compensation, fees and other monetary benefits as a result of

inducing Plaintiff and the Class to choose a YES account, as alleged herein. Defendants have been unjustly enriched by their conduct, as alleged herein, because Defendants benefitted from their improper conduct at the expense of Plaintiff and the Class. Equity and good conscience require restitution from Defendants to Plaintiff and the Class.

77.     By engaging in self-dealing and inequitable conduct in connection with inducing Plaintiff and the Class to choose a YES account, UBS obtained benefits from Plaintiff and the proposed Class in the form of interest, charges, compensation to Defendants and fees. Defendants' receipt of such improper benefits as a result of inducing Plaintiff and the Class to choose a YES account is not governed by any contract between YES account holders and Defendants.

78.     It is against equity and good conscience to permit Defendants to retain such benefits, commissions, compensation, fees and personal benefits resulting from their misconduct. As a result of the special fiduciary relationship of trust and confidence between the parties and the facts alleged herein, Defendants have been and will be unjustly enriched if they are permitted to retain such funds. Therefore, a constructive trust should be established over such funds, including improperly obtained charges and/or other fees, expenses, compensation to Defendants and costs. Plaintiff and the Class were damaged by Defendants' unjust enrichment and seek disgorgement, restitution and return of the benefits retained by the Defendants, which equity and good conscience make it improper for Defendants to retain.

79.     In the alternative to their at-law allegations, Plaintiff and the Class allege that they have no adequate remedy at law and have been damaged in an amount to be determined at the trial of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the proposed Class pray for judgment against Defendants as follows:

A.      Imposition of a constructive trust and an Order granting restitution, disgorgement of ill-gotten gains and profits, and such other equitable relief as the Court deems just and proper;

B.      For actual damages;

C.      For reasonable attorneys' fees, costs and expenses of investigation and litigation, including experts' fees and costs;

D.      For costs of suit, pre-judgment, and post-judgment interest; and

E.      For such other and further relief as the Court may deem necessary or appropriate.


DATED: December 5, 2021                  Respectfully submitted,

                                         **KIRBY McINERNEY LLP**

                                         /s/ *Ira M. Press*
                                         Ira M. Press
                                         Daniel Hume
                                         250 Park Avenue, Suite 820
                                         New York, New York 10177
                                         Tel:     (212) 371-6600
                                         Email: dhume@kmllp.com
                                                 ipress@kmllp.com

                                         *Liaison Counsel for Plaintiff Christian Dumontet*
                                         *and the Proposed Class*

                                         **BERGER MONTAGUE PC**
                                         Michael Dell'Angelo (SBN 032581997)
                                         Barbara A. Podell
                                         Phyllis Parker
                                         Andrew Abramowitz
                                         1818 Market Street, Suite 3600
                                         Philadelphia, PA 19103
                                         Tel:     (215) 875-3000
                                         Email: mdellangelo@bm.net
                                                 bpodell@bm.net
                                                 pparker@bm.net
                                                 aabramowitz@bm.net

                                         *Counsel for Plaintiff Christian Dumontet and the*
                                         *Proposed Class*