**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTIAN DUMONTET, Individually and on behalf of all those similarly situated, | Case No. 1:21-cv-10361-GHW-GWG |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| UBS FINANCIAL SERVICES, INC., MATTHEW S. BUCHSBAUM, SCOTT M. ROSENBERG, GERARD COSTELLO and SONIA M. ATTKISS, | JURY TRIAL DEMANDED |
| Defendants. | |

# TABLE OF CONTENTS

Page

SUMMARY .................................................................................................................... 1

INTRODUCTION ........................................................................................................... 2

JURISDICTION AND VENUE ....................................................................................... 5

PARTIES ........................................................................................................................ 6

    A.   Plaintiff ................................................................................................................ 6

    B.   Defendants ........................................................................................................... 6

FACTUAL BACKGROUND ........................................................................................... 7

    A.   UBS YES Clients Paid a Flat Fee on the Amount of the YES Mandate,
           Regardless of Trading in the YES Account .................................................... 7

    B.   The UBS YES Team Was "Constructively Discharged" By Credit Suisse
           and Used Their Personal and Credit Suisse Email Accounts to Steal
           Substantial Amounts of Valuable Confidential Information Relating
           to Credit Suisse's YES Business and Clients ................................................. 8

    C.   Affirmative Fiduciary Obligations of Utmost Good Faith and
           Full Disclosure are Imposed on Financial Advisers ................................... 10

CLASS ACTION ALLEGATIONS ............................................................................... 15

FIRST CAUSE OF ACTION
Breach of Fiduciary Duty (Against All Defendants) ............................................ 17

SECOND CAUSE OF ACTION
Aiding And Abetting Breach Of Fiduciary Duty (Against All Defendants) ......... 20

THIRD CAUSE OF ACTION
Unjust Enrichment (Against All Defendants) ...................................................... 20

PRAYER FOR RELIEF .............................................................................................. 21

Plaintiff Christian Dumontet ("Plaintiff"), on behalf of himself and all others similarly situated who chose accounts in UBS Financial Services, Inc.'s ("UBS" or the "Company") Yield Enhancement Strategy ("YES") program and paid flat fees on the Mandate amounts pledged to their accounts upon opening them, regardless of whether and which, if any, trades were executed in the so mandated YES accounts (the "Class"), alleges as follows against Defendants UBS, Matthew S. Buchsbaum ("Buchsbaum"), Scott M. Rosenberg ("Rosenberg"), Gerard Costello ("Costello"), and Sonia M. Attkiss ("Attkiss") ("Individual Defendants" or the "YES Team") (collectively, "Defendants"), based on personal knowledge as to Plaintiff and his own acts, and otherwise on information and belief, based on the investigations of his counsel which included a review of public statements and media reports, as well as other publicly available commentary, analysis, and information. Upon information and belief, Plaintiff believes that discovery will further support the allegations in this Amended Class Action Complaint.

## SUMMARY

1.      The breach of fiduciary duty and unjust enrichment claims asserted herein are brought by Plaintiff and other clients of UBS who chose UBS YES accounts – into which UBS clients collectively pledged funds called "Mandate" amounts of approximately $5.7 billion at the height of enrollment. Upon making a Mandate to pledge funds to a UBS Yes account, clients paid a flat fee on the Mandate amounts, regardless of whether and which, if any, trades were executed in the so mandated YES accounts or the amount of funds in those accounts. The YES accounts were double-dipping, fee generating machines for UBS and the YES Team, which yielded substantial fees for them, even if there were no transactions in the YES accounts.

2.      UBS and the YES Team solicited Plaintiff and the Class to open the YES accounts and to collect flat fees from them without complying with their affirmative and ongoing fiduciary

obligations of utmost good faith and full disclosure to disclose material information that impacted their integrity imposed by rules and regulations of the Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), and pursuant to the Investment Advisers Act of 1940. The integrity and honesty of financial advisers is presumptively material to their clients.

3.     Defendants' opening of YES accounts under these circumstances invalidates and voids the Mandate of Plaintiff and members of the proposed Class to open a UBS YES account and renders Defendants' receipt and retention of the substantial flat fees they received on the Mandate amounts unjust and improper.

4.      Plaintiff and the Class seek equitable relief in the forms of restitution of the flat fees paid by Plaintiff and the Class on the Mandate amounts in their YES accounts, disgorgement by Defendants of these ill-gotten gains, a constructive trust imposed on such ill-gotten gains, and any other appropriate equitable remedies.

## INTRODUCTION

5.     Prior to UBS' initiation of the YES program and hiring of the YES Team around the end of 2015, UBS and its corporate affiliates experienced years of lagging results and poor performance in their investment banking business. In response, UBS embarked on a turnaround plan that completely reoriented UBS' focus from investment banking to brokerage and financial advisory services under the guise of wealth management. That change in emphasis required UBS to generate significant advisory service fee income from its investment advisory client base to make up for the lower revenue generated from its investment banking activities. Like other wealth management companies, UBS maintained a fee structure pursuant to which it charged its clients fees to provide the financial advice they sought, fees that were assessed generally on the value of

a client's portfolio. Additional fee income could be generated if a client added capital to his or her account, or if the account increased in value.

6.     Defendants realized that another way to increase fee income was to devise a scheme that would enable UBS to charge a second set of flat fees on the same underlying assets. Accordingly, Defendants conceived of a plan to double-dip on fees: to assess one fee on the underlying value of a client's portfolio and a second flat fee when those same securities were used as collateral for the YES accounts – called the Mandate amounts. YES advisory customers did not have to invest any money to choose a YES account. Rather, to do so, they only had to make the decision to designate a portion of their existing UBS investment portfolio as collateral for a margin account called the Mandate that could be used for the YES program.

7.     A flat fee was charged by UBS on the Mandate amount, regardless of whether and which, if any, trades were executed in the so mandated YES accounts or the amount of funds in the YES account. UBS' Amendment to the Advisory Relationship Agreement and Form ADV Disclosure Brochure relating to the UBS YES account provided: **"Unlike other advisory strategies where your Program Fee is typically determined on the value of eligible assets in an account, billing for the YES Strategy is based on the Mandate amount of the strategy."**

8.     Defendants' efforts to recruit UBS advisory customers to choose YES accounts were successful and generated substantial enrollments. At the height of the program, about 1,500 UBS advisory customers reportedly chose YES accounts and pledged about $5.7 billion in their YES account Mandates – and paid substantial flat fees on those amounts.

9.     As a registered investment adviser and fiduciary of its advisory customers such as Plaintiff and the Class, UBS is subject to federal and state rules and regulations, including but not limited to those promulgated by the SEC, FINRA, and pursuant to the Investment Advisers Act of

1940, that mandate the Company to adopt policies and procedures to ensure compliance with the applicable laws and regulations and, in particular, provide mandated disclosures to its customers. Such disclosure mandates require UBS to disclose to its customers all material facts about any legal event that is material to a client or prospective client's evaluation of the integrity of the adviser and its personnel. Further, UBS and the YES Team are required to make full disclosures to customers about the accounts and integrity of the financial advisers it proposes or recommends to such customers.

10.     When soliciting Plaintiff and the Class to choose YES accounts and to pledge Mandate amounts on which they paid flat fees, Defendants failed to comply with their affirmative and ongoing obligations of full disclosure and utmost good faith by concealing two facts that were material to Defendants' integrity, honesty, and UBS' client's engagement of UBS and the YES Team as their advisers for the YES accounts. *First*, as stated under penalty of perjury in the sworn Verified Petition of their own counsel, the YES Team had been "*constructively discharged*" by their former employer, Credit Suisse Securities (USA) LLC ("Credit Suisse")[1] prior to moving to UBS. *Second*, a counterclaim had been asserted against the YES Team by Credit Suisse in a confidential FINRA arbitration, accusing them of stealing confidential information relating specifically to the YES program which they had managed for their former employer, Credit Suisse, prior to initiating the YES program at UBS.[2]

---

[1] This fact is stated under penalty of perjury in the Verified Petition ¶3, filed by Paul J. Napoli as counsel for the YES Team ("Verified Petition") in *In the Matter of the Application of Sonia Attkiss*, Index No. 645992/2017 (Supreme Ct. New York, New York County) (hereinafter referred to as "New York Supreme Court Discovery Proceeding").

[2] This fact is stated under penalty of perjury in the Affirmation of Stephen M. Kramarsky ¶16 ("Kramarsky Aff.") as counsel to Credit Suisse in the New York Supreme Court Discovery Proceeding.

11.     The "constructive discharge" of the YES Team by Credit Suisse and accusations of theft relating to Credit Suisse's YES program were material to UBS' customers' understanding and evaluation of the integrity of the YES Team, which served as a fiduciary to Plaintiff and the Class and were mandated by, among other things, Item 9 of the General Instructions for Part 2 of Form ADV and 17 CFR Parts 275 and 279 [SEC Release No. IA-3060] ("*Item 9 requires that an adviser disclose in its brochure material facts about any legal or disciplinary event that is material to a client's (or prospective client's) evaluation of the integrity of the adviser or its management personnel.*"). Defendants' failure to comply with their affirmative fiduciary obligations relating to disclosure of material facts relating to their integrity and legal or disciplinary events caused Plaintiff and the Class to choose YES accounts managed and operated by the YES Team and pay flat fees on the Mandate amounts, thus invalidating and voiding the opening of the YES accounts.

12.     Defendants' breach of their affirmative and ongoing fiduciary obligations of utmost good faith and full disclosure resulted in their unjust and improper receipt and retention of substantial flat fees which they should be required to return to Plaintiff and the Class.

13.     This suit seeks equitable relief in the forms of restitution of the flat fees paid by Class members based on the Mandate amounts in their YES accounts, disgorgement of these ill-gotten gains, a constructive trust imposed on those ill-gotten gains, and any other appropriate equitable remedies.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiff is of diverse citizenship from Defendants and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because among other things, the YES Team was located in this District at UBS Private Wealth Management, 299 Park Avenue, 25th Floor, New York, NY 10171, UBS is located in this District, and a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

### A.     Plaintiff

16.     Plaintiff chose a YES account, pledged a Mandate, and paid flat fees on the Mandate in his YES account. Plaintiff filed a FINRA arbitration claim, but dismissed his claim on December 3, 2021, without receiving any discovery or confidential information or documents from UBS.

### B.     Defendants

17.     Defendant UBS, which offered the YES program to Plaintiff and the Class, is a subsidiary of UBS Group AG. UBS' headquarters are at 1285 Avenue of the Americas, New York, NY 10019. UBS Group AG is a Swiss multinational investment bank and financial services company founded and based in Switzerland. Its American subsidiary, UBS Americas Holding LLC, through its subsidiaries, offers wealth management, asset management, and investment banking and advisory and brokerage services in the United States. The YES Team consists of Defendants Buchsbaum, Rosenberg, Costello, and M. Attkiss, all of whom are Managing Directors of Wealth Management, UBS Private Wealth Management, and Michael Lorenzo, Director of Wealth Management, Senior Wealth Strategy Associate. UBS Private Wealth Management is part of UBS's Private Wealth Management division.

18.     The Individual Defendants Buchsbaum, Rosenberg, Costello, and Attkiss were at all relevant times Managing Directors of Wealth Management at UBS and controlled and managed the YES accounts. Buchsbaum is described in the PMP Yield Enhancement Strategy Amendment

to Advisory Relationship Agreement and Form ADV Disclosure Brochure in the "Key Person Risk" section as follows: "*The Yield Enhancement Strategy is managed by Matthew Buchsbaum, Senior Portfolio Manager, and his team. The portfolio management of the strategy is dependent on Mr. Buchsbaum's skills and ability.*" (emphasis added). Prior to joining UBS, Buchsbaum spent 16 years at Credit Suisse, Rosenberg spent 17 years at credit Suisse, Costello spent 15 years at Credit Suisse, and Attkiss spent 17 years at Credit Suisse.

## FACTUAL BACKGROUND

**A.    UBS YES Clients Paid a Flat Fee on the Amount of the
        YES Mandate, Regardless of Trading in the YES Account**

19.    UBS' Amendment to the Advisory Relationship Agreement and Form ADV Disclosure Brochure were provided in identical or virtually identical form to Plaintiff and the Class at the opening of the UBS YES accounts. The Agreement and Brochure provide that a flat fee would be charged to UBS YES clients on the Mandate amount in their YES accounts, even if there was no trading in the YES account and regardless of any actual trading in the YES account or the amount of funds in the YES account:

> **Mandate for the YES Strategy.**   Billing: Generally, Program Fees for investment advisory accounts are calculated based on the value of eligible assets in your Accounts.  As the value of the assets in your Account changes due to appreciation, depreciation, contributions or withdrawals, those changes impact the actual Program Fee charged on the Account. *The billing practice for the YES Strategy is different from the standard process described in the Advisory Relationship Agreement and Form ADV*.
>
> In order to enroll in the YES Strategy, you will be required to select a "Mandate" for the Strategy. The Mandate amount is the amount of collateral you are willing to put at risk. For example, you have accounts with $10 million in assets and decide to commit $3 million out of the $10 million as collateral for the YES Strategy. The Mandate amount is therefore $3 million.
>
> **Unlike other advisory strategies where your Program Fee is typically determined on the value of eligible assets in an account, billing for the YES Strategy is based on the Mandate amount of the strategy (which in the above example, is $3 million).  However, your YES Strategy account**

**may have significantly less than $3 million in actual asset value (the value of the options/puts/cash in the account). While the actual value of assets in your Account will fluctuate over time, the Mandate remains constant unless you change it by notifying your Financial Advisory or UBS lowers the Mandate. We will confirm any change in the Mandate amount to you in writing. Depending on the value of your YES Strategy account, this practice of billing on the Mandate amount will result in higher compensation to UBS and your PMP Portfolio Manager than if the Program Fee was based on the value of eligible assets in your YES Strategy account.**

**B.      The UBS YES Team Was "Constructively Discharged" By Credit Suisse and Used Their Personal and Credit Suisse Email Accounts to Steal Substantial Amounts of Valuable Confidential Information Relating to Credit Suisse's YES Business and Clients**

20.      The facts detailing the "constructive discharge" of the YES Team by Credit Suisse and the alleged theft are alleged under penalty of perjury in the Affirmation of Stephen M. Kramarsky ("Kramarsky Aff."), counsel to Credit Suisse, and the Verified Petition filed by Paul J. Napoli ("Verified Petition"), counsel for the YES Team, under penalty of perjury in the New York Supreme Court Discovery Proceeding, which is a discovery proceeding ancillary to the confidential FINRA arbitration initiated by the YES Team.

21.      Credit Suisse employed the Individual Defendants ("YES Team") in the U.S. Domestic Private Banking Business as individual advisers for over 18 years and as a team for over 15 years. Credit Suisse "constructively discharged" the Individual Defendants in the fall of 2015. Verified Petition ¶ 3.

22.      In November of 2015, the Individual Defendants joined Credit Suisse's competitor, UBS, to manage a YES program like the one they had managed for Credit Suisse. In connection with that move, the Individual Defendants negotiated an extraordinary compensation package from UBS. At Credit Suisse, the Individual Defendants' compensation included certain amounts paid in advance. Specifically, they effectively received a percentage of the fees paid to Credit Suisse by the Credit Suisse clients they covered. Some of those clients were billed quarterly in advance, and

the Individual Defendants received those payments at the start of each quarter. Kramarsky Aff. ¶¶ 9, 10, 11.

23.     When the Individual Defendants left Credit Suisse mid-quarter, they were required under the applicable compensation plan to refund the unearned portion of the client-fee payments for the balance of the quarter. Although the Individual Defendants could have made this payment out of the millions of dollars they received from UBS, they refused to do so. Instead, on March 1, 2017, they commenced a confidential FINRA arbitration against Credit Suisse, purportedly over various unvested contingent deferred awards they left behind when they went to UBS. Kramarsky Aff. ¶¶ 12, 13. The YES Team alleged breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, conversion, unpaid wages, and unjust enrichment. Verified Petition ¶ 4.

24.     On June 21, 2017, Credit Suisse filed counterclaims in the confidential FINRA arbitration against the Individual Defendants, alleging breach of contract, breach of fiduciary duty, misappropriation of confidential information, and unjust enrichment. Verified Petition ¶ 5. In preparing its defense in the confidential FINRA arbitration, Credit Suisse discovered that the Individual Defendants "had used their personal and Credit Suisse email accounts to steal substantial amounts of valuable confidential information relating to Credit Suisse's business and clients, apparently for use in their new jobs at UBS. The stolen documents included confidential Credit Suisse performance analytics and related materials concerning a proprietary investment strategy offered to Credit Suisse clients (known as the 'Yield Enhancement Strategy' or 'YES') as well as confidential client account information, including investment strategies and account totals, for some Credit Suisse clients." Kramarsky Aff. ¶ 16.

### C. Affirmative Fiduciary Obligations of Utmost Good Faith and Full Disclosure are Imposed on Financial Advisers

25.     Theft by an adviser or one of its executives reflects negatively on the integrity of the adviser and its management personnel and, therefore, is presumptively material to clients. Accusations of theft of confidential information involving an adviser are material to advisory customers for many reasons, including how such theft accusations may reflect upon the adviser's integrity and the effect it may have on the degree of trust and confidence a customer would place in the adviser. The concealed facts alleged herein were material to Plaintiff's and the Class's decision to choose a YES account, entrust their assets to the YES Team, and pledge a Mandate upon which they would pay a flat fee.

26.     As Defendants continued to solicit UBS clients to choose a YES account and pledge a Mandate which would yield substantial flat fees for Defendants, Defendants failed to comply with their continuing affirmative obligation to disclose the pendency of the FINRA arbitration and the material facts that the YES Team was "constructively discharged" from Credit Suisse and was accused of theft of confidential information relating to the YES program at Credit Suisse to each UBS client who chose a YES account and pledged a Mandate. As a result, the opening of the UBS YES accounts was invalid and void and Defendants' receipt and retention of substantial flat fees on the Mandate amounts is improper and unjust.

27.     Arbitration is generally confidential, and documents submitted in arbitration are not publicly available, thus preventing Plaintiff and the Class from discovering the allegations in the claims and counterclaim in the FINRA confidential arbitration, unless their investment advisers complied with their affirmative obligations to disclose such material information, as mandated by federal law and regulations. UBS and the YES Team did not do so.

28.     UBS's "Yield Enhancement Strategy-Portfolio Management Program," provided in identical or virtually identical form to Plaintiff and the Class informed them that "[i]t is important that you carefully read the agreements and disclosures that we provide to you about the products or services we offer" – i.e., that UBS's mandated disclosure documents are material to its customers. ECF 45-2 at 19.

29.     The General Instructions for Part 2 of Form ADV provide that, if there are legal or disciplinary events that are material to a client's or prospective client's evaluation of the investment advisory business or the integrity of the investment adviser's management, the investment adviser must disclose all material facts regarding those events.  Items 9.A, 9.B, and 9.C of the General Instructions list specific legal and disciplinary events presumed to be material for this Item. If the advisory firm or a management person has been involved in one of these events, the investment adviser must disclose it under Item 9.  However, Items 9.A, 9.B, and 9.C do not contain an exclusive list of material disciplinary events. If the advisory firm or a management person has been involved in a legal or disciplinary event that is not listed in Items 9.A, 9.B, or 9.C, but nonetheless is material to a client's or prospective client's evaluation of the advisory business or the integrity of its management, the adviser must disclose the event. 17 CFR Parts 275 and 279 [SEC Release No. IA-3060].

30.     UBS and the YES Team have an ongoing affirmative obligation to update their ADV forms to inform clients of any "material information that could affect the advisory relationship." The Instructions for Part 2A of Form ADV state: "As a fiduciary, you have an ongoing obligation to inform your clients of any material information that could affect the advisory relationship. As a result, between annual updating amendments, you must disclose material

changes to such information to clients even if those changes do not trigger delivery of an interim amendment. See General Instructions for Part 2 of Form ADV, Instruction 3."

31.     The Instructions further state: "Each year you must (i) deliver, within 120 days of the end of your fiscal year, to each client a free updated brochure that either includes a summary of material changes or is accompanied by a summary of material changes, or (ii) deliver to each client a summary of material changes that includes an offer to provide a copy of the updated brochure and information on how a client may obtain the brochure. See SEC rule 204-3(b) and similar state rules." In addition, the Instructions provide: "Even if you are not required to give a brochure to a client, as a fiduciary you may still be required to provide your clients with similar information, particularly material information about your conflicts of interest and about your disciplinary information." Neither UBS nor the YES Team disclosed the FINRA arbitration, and the facts alleged herein relating to the legal event impacting the integrity of the YES Team. They mentioned neither to YES clients until they disclosed in their BrokerChecks the filing of this action on December 5, 2021.

32.     FINRA's BrokerCheck website states: "BrokerCheck helps you make informed choices about brokers and brokerage firms- and provides easy access to investment adviser information. (https://brokercheck.finra.org/. Accessed March 14, 2022). None of the Individual Defendants disclosed the FINRA arbitration against Credit Suisse and the counterclaim against the YES Team in their FINRA BrokerCheck forms, despite the fact that each Individual Defendant disclosed in their FINRA BrokerCheck forms numerous pending FINRA arbitrations in which the allegations had not yet been proven. Members of the YES Team did not disclose any facts relating to the FINRA arbitration and facts alleged herein to UBS YES clients until they disclosed in their BrokerChecks the filing of this action on December 5, 2021.

33.     The Broker Check website states: "BrokerCheck does not have information regarding civil litigation not involving investments, civil protective orders, criminal matters unless they are felonies, or misdemeanors that are investment-related or involve theft or a 'breach of trust.' Consider doing an internet search to check for that type of information." Upon information and belief, the Individual Defendants' "constructive discharge" by Credit Suisse and the counterclaim in the confidential FINRA arbitration challenging Defendants' integrity and honesty cannot be found through an internet search of UBS' or the Individual Defendants' names.

34.     The FINRA website states: "FINRA's Arbitration Awards database enables users to perform Web-based searches for FINRA and historical NASD arbitration awards free of charge, seven days a week." (https://www.finra.org/arbitration-mediation/arbitration-awards. Accessed March 14, 2022). There is no public award, ruling, appeal or any resolution of the confidential FINRA arbitration initiated by the YES Team or the counterclaim filed against them by Credit Suisse. Upon information and belief and based on Defendants' representation in their motion to dismiss, ECF 44 at 30, the arbitration is still "pending" after almost five years.

35.     UBS and the YES Team failed to comply with their affirmative and ongoing obligation of utmost good faith and full disclosure to disclose the material facts alleged herein in the required sources – UBS' Amendment to the Advisory Relationship Agreement and Form ADV Disclosure Brochure relating to the UBS YES account, the SEC's Investor Adviser Public Disclosure website at Investor.gov/CRS, and on FINRA's BrokerCheck system – or any other source. These are the only public sources available to investors using reasonable due diligence to search for and find the required disclosures of material facts about investment advisory firms and their financial advisers. This is where financial advisers' clients look for material information about their advisers. If the financial advisers do not comply with their affirmative disclosure

obligations mandated by regulations, clients will not be able to discover material information using reasonable due diligence and make informed decisions about their advisers and accounts.

36.     The only mention of the FINRA arbitration is buried in the New York Supreme Court Discovery Proceeding involving an ancillary discovery dispute relating to the FINRA arbitration, as alleged herein. Upon information and belief, the New York Supreme Court Discovery Proceeding cannot be discovered through an internet search by entering the names of the Defendants and could not have been discovered by UBS clients through the exercise of reasonable diligence. Thus, the material undisclosed facts alleged herein were buried in a pleading in a discovery proceeding ancillary to the confidential FINRA arbitration and were unavailable to Plaintiff and the Class through the exercise of reasonable due diligence.

37.     Plaintiff and the Class could not have discovered the confidential FINRA counterclaim, the material facts of the YES Team's "constructive discharge" by Credit Suisse, and the allegations of theft of confidential information using reasonable due diligence by review of the public disclosure sources mandated by federal law and regulations or through internet searches.

38.     UBS and the YES Team required every UBS client who opened a YES account to sign and acknowledge that they read and understood the disclosure forms and agreements provided to all Class members in identical or virtually identical form. Defendants required Plaintiff and the Class to sign these forms as a condition of opening a YES account. UBS's Amendment to the Advisory Relationship Agreement and Form ADV Disclosure Brochure provided in identical or virtually identical form to Plaintiff and the Class required every UBS client who chose a YES account to read, sign, acknowledge, and understand the terms and conditions of the Agreement and authorizing UBS and the YES Team to implement the YES Strategy. ECF 45-3 at 6.

39.     The UBS "Client Qualification Form and Agreement for Options" provided in identical or virtually identical form to Plaintiff and the Class required every UBS client who chose a YES options account to sign and acknowledge the "Important Representations" that "You have read, understand and agree to be bound by the terms and conditions set forth in the Agreement and all other documents included therewith or otherwise completed in connection with opening the Account." ECF 45-5 at 5. The "Yield Enhancement Strategy Margin/Collateral Amendment" provided in identical or virtually identical form to Plaintiff and the Class required every UBS client who chose a YES options account to sign, acknowledge, and agree that they have "read, understand and agreed to the terms and conditions of the PMP Yield Enhancement Strategy Amendment to Advisory Relationship Agreement and Form ADV Disclosure Brochure." ECF 45-6 at 3.

40.     The "Relationship Summary for Individual UBS Wealth Management Clients" underscores the materiality of the required disclosures alleged herein:

> At UBS, we believe transparency about our services and fees is central to our relationship with you. Understanding our services and fees allows you to make informed decisions about how you work with us.
>
> * * *
>
> We act in our capacity as an investment adviser when we recommend that you open an advisory account. . . . When we provide you with a recommendation as your broker-dealer or act as your investment adviser, we have to act in your best interest and not put our interest ahead of yours.

## CLASS ACTION ALLEGATIONS

41.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff asserts claims on behalf of himself and all other persons similarly situated. The Class consists of the following persons or entities:

> All UBS customers who chose a YES account and paid flat fees to Defendants based on the Mandate amounts in their YES accounts regardless of whether and which, if any, trades were executed in the so mandated YES accounts or the amount of funds in the YES accounts. Excluded from the Class are

Defendants, their subsidiaries, agents and employees and members of their immediate families and YES account holders who are already subject to an arbitration finding or award.

42.     Plaintiff and the Class seek restitution, disgorgement, a constructive trust, and all other appropriate equitable relief.

43.     Class treatment of these claims is appropriate because the members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably estimates that Class members number more than 1,500. The precise number of Class members entitled to relief and their addresses are unknown to Plaintiff but can easily be ascertained from UBS' records. Class members may be notified of the pendency of this action by electronic means, mail, publication, and/or other notice.

44.     There is a well-defined community of interest in the relevant questions of law and fact affecting putative Class members. Common questions of law and fact exist as to all Class members, and predominate over any questions solely affecting individual Class members, including but not limited to:

a)      whether Defendants breached their fiduciary duties by engaging in the conduct described herein;

b)      whether Defendants aided and abetted the breaches of fiduciary duty by the other Defendants;

c)      whether Defendants have been unjustly enriched at the expense of Plaintiff and the Class; and

d)      whether Plaintiff and the Class are entitled to the equitable relief of restitution and disgorgement of ill-gotten gains, imposition of a constructive trust on the ill-gotten gains, and any other equitable relief.

45.     Plaintiff's claims are typical of those of the absent Class members. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, rely upon the same equitable remedial theories, and seek the same

relief. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to, or that directly and irrevocably conflict with, the interests of other Class members. Plaintiff is willing and prepared to serve the putative Class in a representative capacity with all of the obligations and duties attendant thereto.

46.     Plaintiff has retained the services of counsel who are experienced in complex class action litigation and in particular, class actions involving investment and financial services matters. Plaintiff's counsel will adequately prosecute this action, and will otherwise assert, protect, and fairly and adequately represent Plaintiff and all absent Class members.

47.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a)     individual claims by all Class members would be impracticable as the costs of pursuit would far exceed what any individual class member has at stake;

b)     all individual Class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c)     the concentration of litigation of these claims in one forum will achieve efficiency, consistency, and promote judicial economy; and

d)     the proposed Class is manageable.

48.     Therefore, class treatment of Plaintiff's claims is both appropriate and necessary.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty (Against All Defendants)

49.     Plaintiff repeats and incorporates the allegations above as if fully set forth herein.

50.     Defendants were fiduciaries to Plaintiff and the Class. The UBS Client Relationship Agreement signed in identical or virtually identical form by every UBS "Individual Wealth Management Client," including Plaintiff and the Class, explicitly acknowledges that UBS has a fiduciary relationship with them:

**Your Relationship with Us**

UBS Financial Services Inc. is registered with the U.S. Securities and Exchange Commission (SEC) as a broker-dealer and an investment adviser, offering both brokerage and investment advisory services. . . .

**When we act as an investment adviser, we have a fiduciary relationship with you under the Investment Advisers Act of 1940. When we provide advice to you in your advisory account (including a recommendation to open an advisory account or to roll over assets or transfer assets from a retirement or other account to an advisory account), we are acting in our capacity as an investment adviser.**

51. Fiduciary duties are imposed on a financial adviser by operation of law because of the nature of the relationship between the two parties. Under the Investment Advisers Act, an adviser has an affirmative obligation of utmost good faith, and full and fair disclosure to its clients of all facts material to the client's engagement of the adviser, as well as a duty to avoid misleading them. As a fiduciary, an investment adviser has an ongoing obligation to inform its clients of any material information that could affect the advisory relationship.

52. Financial advisers like UBS and the Individual Defendants are fiduciaries whose duty is to serve the best interests of their customers, which includes an obligation not to subrogate its customers' interests to its own. An adviser must deal fairly and honestly with customers and prospective customers, seek to avoid conflicts with its customers and, at a minimum, make full disclosure of any material conflict or potential conflict. A customer relies upon such disclosures when selecting his or her own adviser and evaluating the adviser's business practices and conflicts on an ongoing basis. As a result, the disclosures that customers and prospective customers receive are material to their ability to make informed decisions about whether to engage an adviser and, having engaged the adviser, to manage that relationship and choose to enter into specific accounts—in this case, whether to choose a YES account managed by the YES Team and whether to pledge a substantial Mandate from their existing assets on which they would pay a flat fee.

53.     The Individual Defendants breached their fiduciary duties to Plaintiff and the Class by failing to comply with their affirmative and ongoing obligation to disclose the FINRA arbitration and counterclaim, which would have revealed the allegations of the YES Team's "constructive discharge" from Credit Suisse and theft of confidential business and client information from Credit Suisse so that they could use the information for their own gain with a competitor (UBS). These material facts and legal events relate directly to the integrity and honesty of UBS and the YES Team. The YES accounts opened under these circumstances are invalid and void and the flat fees which Defendants received on the Mandate amounts are improper, unjust, and ill-gotten.

54.     As a direct and proximate consequence of the Defendants' violation of their affirmative and ongoing fiduciary obligations of utmost good faith and full and fair disclosure, Plaintiff and the Class chose YES accounts and pledged substantial Mandates upon which they paid flat fees, regardless of any trading in the YES accounts.

55.     UBS's Amendment to the Advisory Relationship Agreement and Form ADV Disclosure Brochure, the UBS "Client Qualification Form and Agreement for Options," and the "Yield Enhancement Strategy Margin/Collateral Amendment" were provided in identical or virtually identical form to Plaintiff and the Class. Each of these forms required every UBS client who chose a YES account to read, sign, acknowledge that they understood the terms and conditions of the agreements, read all of the relevant documents, and authorize UBS and the YES Team to open their YES accounts. Signing these forms was required before Defendants would open a YES account.

56.     Plaintiff's allegations do not rely on allegations of false conduct, nor is fraud an essential or integral part of Plaintiff's breach of fiduciary claim, which is based on their

noncompliance with their affirmative and ongoing obligations of utmost good faith and full and fair disclosure imposed by law and the regulations alleged herein.

57.     Plaintiff and the Class seek equitable relief in the forms of restitution of the ill-gotten gains which Defendants received and retained through their improper conduct alleged herein, disgorgement of Defendants' ill-gotten gains, imposition of a constructive trust on such ill-gotten gains, and any other equitable relief deemed just and proper.

## SECOND CAUSE OF ACTION

### Aiding And Abetting Breach Of Fiduciary Duty
### (Against All Defendants)

58.     Plaintiff repeats and incorporates the allegations above as if fully set forth herein.

59.     As alleged herein, the Defendants breached their fiduciary duties to Plaintiff and the Class.

60.     Each Defendant aided and abetted each other Defendant in breaching their fiduciary duties to Plaintiff and the Class by knowingly inducing and participating in a substantial way in the breaches of fiduciary duty, as alleged herein.

61.     As a direct result of each Defendant aiding and abetting the other Defendants' breaches of fiduciary duty, Plaintiff and the Class seek equitable relief in the forms of restitution of the ill-gotten gains which Defendants received and retained through their improper conduct alleged herein, disgorgement of Defendants' ill-gotten gains, imposition of a constructive trust on such ill-gotten gains, and any other equitable relief deemed just and proper.

## THIRD CAUSE OF ACTION

### Unjust Enrichment
### (Against All Defendants)

62.     Plaintiff repeats and incorporates the allegations above as if fully set forth herein.

63. All Defendants were enriched at the expense of Plaintiff and the Class in that they received flat fees on the Mandate amounts in violation of their affirmative and ongoing fiduciary obligations of utmost good faith and full and fair disclosure of the facts alleged herein, which were material to the UBS client's engagement of their advisers and choice of accounts. Plaintiff and the Class seek equitable relief in the forms of restitution of the ill-gotten gains which Defendants received and retained through their improper conduct alleged herein, disgorgement of Defendants' ill-gotten gains, imposition of a constructive trust on such ill-gotten gains, and any other equitable relief deemed just and proper.

64. Defendants' receipt of flat fees on the Mandate amounts was a result of their breach of their affirmative and ongoing fiduciary obligations of utmost good faith and full and fair disclosure of the facts alleged herein material to the client's engagement of the adviser and choice of an account. This renders the opening of the YES accounts invalid and void and Defendants' receipt and retention of flat fees unjust. It is against equity and good conscience to permit Defendants to retain those fees.

65. Defendants have been and will be unjustly enriched if they are permitted to retain such flat fees as a result of their noncompliance with their obligations and the invalid opening of the YES accounts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the proposed Class pray for judgment against Defendants as follows:

A. Imposition of a constructive trust on the flat fees charged on the Mandate amounts and an Order granting restitution of the ill-gotten flat fees imposed on the Mandates, disgorgement of Defendants' ill-gotten gains and any other equitable relief as the Court deems just and proper;

B.      For reasonable attorneys' fees, costs, and expenses of investigation and litigation, including experts' fees and costs;

C.      For costs of suit, pre-judgment, and post-judgment interest; and

D.      For such other and further relief as the Court may deem necessary or appropriate.

DATED: March 15, 2022             Respectfully submitted,

**KIRBY McINERNEY LLP**

/s/ *Ira M. Press*
Ira M. Press
Nicole A. Veno
250 Park Avenue, Suite 820
New York, New York 10177
Tel:    (212) 371-6600
Email: ipress@kmllp.com
       nveno@kmllp.com

*Liaison Counsel for Plaintiff Christian Dumontet and the Proposed Class*

**BERGER MONTAGUE PC**
Michael Dell'Angelo (SBN 032581997)
Barbara A. Podell
Phyllis Parker
Andrew Abramowitz
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel:    (215) 875-3000
Email: mdellangelo@bm.net
       bpodell@bm.net
       pparker@bm.net
       aabramowitz@bm.net

*Counsel for Plaintiff Christian Dumontet and the Proposed Class*