**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTIAN DUMONTET, Individually and on behalf of all those similarly situated, | Case No. 1:21-cv-10361-GHW-GWG |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| UBS FINANCIAL SERVICES, INC., MATTHEW S. BUCHSBAUM, SCOTT M. ROSENBERG, GERARD COSTELLO and SONIA M. ATTKISS, | JURY TRIAL DEMANDED |
| Defendants. | |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL ALLEGATIONS ...................................................................................... 4

ARGUMENT ............................................................................................................. 9

I.    Plaintiff's Claims Are Not Barred By SLUSA ................................................. 9

II.   Plaintiff's Claims Are Timely ...................................................................... 13

      A.    The Affirmative Defense of Statute of Limitations Should Not be Decided on a Motion
            to Dismiss ........................................................................................... 13

      B.    Equitable Estoppel Applies to Defendants' Statute of Limitations Defense ................. 14

      C.    In the Alternative, Plaintiff's Claims Are Subject to Six Year Statutes of Limitations. 17

III.  Plaintiff Has Alleged Actionable Claims ....................................................... 19

      A.    Defendants Had a Disclosure Obligation That Was Mandated By Regulations ........... 19

      B.    The Constructive Discharge and Alleged Theft of Confidential Information Were Not
            Publicly Available ................................................................................. 23

CONCLUSION ....................................................................................................... 25

Page(s)

<u>Cases</u>

*Access Point Med., LLC v. Mandell,*
106 A.D.3d 40 (App. Div. 2013) ......................................................................... 18

*Barron Partners LP v. LAB123 Inc.,*
593 F. Supp. 2d 667 (S.D.N.Y. 2009)................................................................... 20

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.,*
323 F. Supp. 3d 393 (S.D.N.Y. 2018).................................................................. 14

*Fishman v. Phila. Fin. Life Assurance Co.,*
2016 WL 2347921 (S.D.N.Y. May 3, 2016) ........................................................ 10

*Global Network Comm's, Inc. v. City of New York,*
458 F.3d 150 (2d Cir. 2006).................................................................................. 23

*Golden Pac. Bancorp v. F.D.I.C.,*
273 F. 3d 509 (2d Cir. 2001)................................................................................. 19

*Harrison v. Rubenstein,*
2007 WL 582955 (S.D.N.Y. Feb. 26, 2007)................................................... 14, 20

*Hauptman v. Interactive Brokers, LLC,*
2018 WL 4278345 (S.D.N.Y June 12, 2018) ...................................................... 10

*Hill v. HSBC Bank plc,*
207 F. Supp. 3d 333 (S.D.N.Y. 2016).................................................................. 12

*Horan v. Viera,*
2021 WL 1200220 (E.D.N.Y. Mar. 12, 2021) ................................................. 3, 15

*IDT Corp. v. Morgan Stanley Dean Witter & Co.,*
12 N.Y.3d 132 (2009) ....................................................................................... 3, 14

*In re Beacon Assocs. Litig.,*
745 F. Supp. 2d 386 (S.D.NY. 2010)................................................................... 12

*In re Global Crossing Ltd. Sec. Litig.,*
313 F. Supp. 2d 189 (S.D.N.Y. 2003)............................................................. 13, 14

*In re Primeo and Thema Herald,*
730 F. 3d 112 (2d Cir. 2013)................................................................................ 12

*In re Integrated Resources Real Estate Limited Partnerships Securities Litig.,*
815 F. Supp. 620 (S.D .N.Y.1993)....................................................................... 13

*In re Kingate Management Ltd. Litig.,*
784 F.3d 128 (2d Cir. 2015).................................................................... 3, 10, 11

*In re Stillwater Cap. Partners Inc. Litig.,*
851 F. Supp. 2d 556 (S.D.NY 2012).................................................................... 13

*Ingrami v. Rovner,*
847 N.Y.S.2d 132 (N.Y. App. Div. 2007) ........................................................... 19

*Int'l Controls Corp. v. Vesco,*
556 F.2d 665 (2d Cir. 1977)................................................................................... 1

*Island Software and Computer Serv., Inc. v. Microsoft Corp.,*
413 F.3d 257 (2d Cir. 2005).................................................................................. 24

*Liu v. Sec and Exch. Comm.,*
140 S. Ct. 1936 (2020) ......................................................................................... 18

*Mangiafico v. Blumenthal,*
  471 F.3d 391 (2d Cir.2006)..................................................................................... 23

*Marchak v. JP Morgan Chase & Co.,*
  84 F. Supp. 3d 197 (E.D.N.Y. 2015) ..................................................................... 12

*Monaghan v. Ford Motor Co.,*
  71 A.D.3d 848 (2d Dept 2010) .............................................................................. 17

*Newman v. Fam. Mgmt. Corp.,*
  748 F. Supp. 2d 299 (S.D.N.Y. 2010)................................................................... 12

*Pereira v. Cogan,*
  2002 WL 989460 (S.D.N.Y. May 10, 2002) ........................................................ 17

*Root v. Lake Shore & M.S. Railway Co.,*
  105 U.S. 189 (1881).............................................................................................. 18

*Shepherd v. Nandalawaya,*
  2020 WL 1963126 (W.D.N.Y. Apr. 21, 2020) ....................................................... 1

*Spinnato v. Unity of Omaha Life Ins. Co.,*
  322 F. Supp. 3d 377 (E.D.N.Y. 2018) ................................................................... 15

*Swan Brewery Co. v. U.S. Tr. Co. of New York,*
  143 F.R.D. 36 (S.D.N.Y.1992) .............................................................................. 17

*Washington v. State Farm Mut. Auto Ins. Co.,*
  2021 WL 5028796 (Tex. App. Oct. 28, 2021)....................................................... 23

*Webb v. RLR Assocs., Ltd.,*
  2004 WL 555699 (S.D.N.Y. Mar. 19, 2004) ........................................................ 17

*Whitney Holdings, Ltd. v. Givotovsky,*
  988 F. Supp. 732 (S.D.N.Y. 1997)............................................................ 3, 15, 16

*Winne v. Equitable Life Assurance Soc'y of U.S.,*
  315 F. Supp. 2d 404 (S.D.N.Y 2003)..................................................................... 13

*Zumpano v. Quinn,*
  6 N.Y.3d 666 (2006) .............................................................................................. 15

Statutes

15 U.S.C. §78bb(f)(1) .................................................................................................... 2

Rules

CPLR §213(1)................................................................................................................ 17

Regulations

General Instructions for Part 2 of Form ADV, 17 CFR Parts 275 and 279 [SEC Release No. IA-
  3060]17 CFR Parts 275 and 279 ........................................................................ 4, 5

Other Authorities

Restatement (Third) of Restitution and Unjust Enrichment (Am. Law Inst. 2011) ..................... 18
1 Dan B. Dobbs, Law of Remedies: Damages Equity Restitution § 1(1) (2nd ed. 1993) .............18

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff Christian Dumontet ("Plaintiff") hereby submits this memorandum in opposition to Defendants' Motion to Dismiss Amended Class Action Complaint, ECF 51.[1]

Plaintiff alleges that when soliciting Plaintiff and the Class to choose UBS Financial Services, Inc. ("UBS") Yield Enhancement Strategy ("YES") accounts and to pledge Mandate amounts on which they paid flat fees based on the size of the Mandate and regardless of whether or not there was any trading in the YES accounts, Defendants UBS and Matthew Buchsbaum, Scott Rosenberg, Gerard Costello and Sonia Attkiss ("Individual Defendants" or "YES Team") failed to comply with their affirmative and ongoing fiduciary obligations of full disclosure and utmost good faith imposed by federal rules and regulations by omitting two required facts that were material to their clients' and potential clients' evaluation of Defendants' integrity and honesty, and UBS' client's engagement of UBS and the YES Team as their fiduciary advisers for the YES accounts. *First*, as stated under penalty of perjury in the sworn Verified Petition of the Individual Defendants' own counsel, the YES Team had been "constructively discharged" by their former employer, Credit Suisse Securities (USA) LLC ("Credit Suisse")[2] prior to moving to UBS. *Second*, a counterclaim had been asserted against the YES Team by Credit Suisse in a confidential

---

[1] The Amended Class Action Complaint, ECF 46, is hereinafter referred to as "Amended Complaint" and cited as ¶---. An amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [the original complaint] of no legal effect." *Shepherd v. Nandalawaya*, 2020 WL 1963126, at *5 (W.D.N.Y. Apr. 21, 2020) citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). The Amended Complaint "stand[s] alone as the sole complaint in the action." *Shepherd*, 2020 WL 1963126, at *5. Therefore, Defendants' arguments referring to the original Complaint should be disregarded. *See e.g.*, ECF 51 at 6, 9, 10, 11, 14, 15, 16-17, 19.

[2] This fact is not a mere accusation, as Defendants argue, because it is stated under penalty of perjury in the Verified Petition ¶3, filed by Paul J. Napoli as counsel for the YES Team ("Verified Petition") in *In the Matter of the Application of Sonia Attkiss*, Index No. 645992/2017 (Supreme Ct. New York, New York County) (hereinafter referred to as "New York Supreme Court Discovery Proceeding"). ¶10 at n.1.

FINRA arbitration, accusing them of stealing confidential information from Credit Suisse relating specifically to the YES program which they had managed for their former employer, Credit Suisse, prior to initiating the new YES program at UBS. ¶10.[3]

Defendants' breach of their affirmative and ongoing fiduciary obligations invalidated and voided the opening of the YES accounts by Plaintiff and the Class, ¶11, making Defendants' receipt and retention of substantial flat fees on the Mandate amounts improper and unjust. ¶26. Plaintiff seeks equitable relief in the forms of restitution of the flat (non-trading) fees paid by Class members based on the Mandate amounts in their YES accounts, disgorgement of these fees, a constructive trust imposed on the fees and any other appropriate equitable remedies. ¶13. Plaintiff does not seek trading losses or any relief in connection with the purchase or sale of a covered security.

Defendants' motion to dismiss should be denied in its entirety for the following reasons:

***First***, Plaintiff's claims are not precluded by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §78bb(f)(1) ("SLUSA"), which prohibits class action claims arising out of misrepresentations or omissions made "*in connection with the purchase or sale of a covered security*." Plaintiff is *not* seeking trading losses and Plaintiff's claims are *not* "in connection with the purchase or sale of a covered security." Defendants conceded as much, stating in their Memorandum: "***Both omissions relate to an employment dispute over deferred compensation between the YES Team and Credit Suisse: neither relates in any material way to the trading or operation of YES many years later at UBS***." ECF 51 at 22 (emphasis added). Defendants further support the fact that Plaintiff's claims are not "in connections with the purchase or sale of a covered

---

[3] This fact is not a mere accusation, as Defendants argue, because it is stated under penalty of perjury in the Affirmation of Stephen M. Kramarsky ¶16 ("Kramarsky Aff.") as counsel to Credit Suisse in the New York Supreme Court Discovery Proceeding. ¶10 at n.2.

security" when arguing that they did not have to disclose the allegations of theft against them because such allegations are "***unrelated to particular investments.***" ECF 51 at 23 (emphasis added).

Second Circuit authority supports Plaintiff's arguments that his "duty-based obligation" claims for unearned fees on invalid and void agreements do not allege false conduct and are not precluded by SLUSA. *See e.g., In re Kingate Management Ltd. Litig.*, 784 F.3d 128, 152 (2d Cir. 2015) (claims in Groups 4 and 5 are nor precluded by SLUSA).

***Second,*** Plaintiff's claims are timely. It is inappropriate at the motion to dismiss stage for the Court to determine at what point Plaintiff should reasonably have known of the claims he alleges. Defendants' affirmative defense is premature and should not be decided on a motion to dismiss; regardless, the affirmative defense fails on substantive grounds.

While a breach of fiduciary duty accrues when the claim becomes enforceable, *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009), "an exception is the doctrine of equitable estoppel," where the opposing party's wrongdoing "produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." *Horan v. Viera*, 2021 WL 1200220, at *6 (E.D.N.Y. Mar. 12, 2021). That is so here, where Defendants are fiduciaries and failed to comply with their regulatorily mandated disclosure obligations. A "failure to disclose facts underlying a claim, even without any affirmative acts of concealment, nevertheless may equitably estop a statute of limitations defense if the defendant stood in a fiduciary relationship which obligated the defendant to inform the plaintiff of such facts." *Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 746 (S.D.N.Y. 1997).

Defendants are estopped from raising a statute of limitations defense, but if the Court considers the defense, six-year statutes of limitations apply to Plaintiff's claims for breach of fiduciary duty, aiding and abetting and unjust enrichment. Plaintiff opened his YES account on

August 29, 2017, ECF 52-15 and 16; he paid the first flat fee in October 2017, ECF 52-14 at 18; and his initial Complaint was filed on December 5, 2021, ECF 1 − well within the six-year statutory periods.

*Third*, Plaintiff's complaint alleges actionable omissions. Defendants assert that there "is no case, rule or other authority requiring Defendants to make those disclosures," ECF 51 at 8. Not so. As Plaintiff alleged, Defendants breached an affirmative and ongoing fiduciary duty to disclose a "legal event" material "to a client's or prospective client's evaluation of the advisory business or the integrity of its management" imposed by Item 9 of the General Instructions for Part 2 of Form ADV, 17 CFR Parts 275 and 279 [SEC Release No. IA-3060] and other regulatory requirements. ¶29. Both the "constructive discharge" by Credit Suisse and the allegations of theft of confidential information relating to the YES program were "legal events" crucial to Plaintiff's evaluation of Defendants' integrity. Failure to inform clients and prospective clients like Plaintiff and the Class of such "legal events" violates Defendants' fiduciary duties memorialized by SEC Release IA-3060, among other affirmative fiduciary obligations.

## FACTUAL ALLEGATIONS

Plaintiff alleges that he and other clients of UBS chose UBS YES accounts – into which approximately 1,500 UBS clients collectively pledged funds called "Mandate" amounts of approximately $5.7 billion at the height of enrollment. Upon making a Mandate to pledge funds to a UBS YES account, clients paid a flat fee on the Mandate amounts, regardless of whether or not trades were executed in the so mandated YES accounts. ¶1. YES advisory customers did not have to invest any money to choose a YES account. Rather, to do so, they only had to make the decision to designate a portion of their existing UBS investment portfolio as collateral for a margin account called the Mandate that could be used for the YES program. ¶6. UBS' Amendment to the

Advisory Relationship Agreement and Form ADV Disclosure Brochure relating to the UBS YES account provided:

> **Unlike other advisory strategies where your Program Fee is typically determined on the value of eligible assets in an account, billing for the YES Strategy is based on the Mandate amount of the strategy.** ¶7

Plaintiff's claims relate to his decision to open a YES account and chose UBS and the YES Team as his trusted financial advisers and fiduciaries, contrary to Defendants' conflicting assertion that Plaintiff's claims relate to his investment in the YES strategy, ECF 51 at 8, or trading in options, ECF 51 at 17. Plaintiff was required to pay flat fees on the Mandate amount, regardless of the trading in his YES account—and even if there was no trading. ¶1

Plaintiff does not allege false conduct by Defendants "in connection with the purchase or sale of a covered security,"[4] but instead alleges that as a registered investment adviser and fiduciary of its advisory customers, Defendants breached their affirmative and ongoing fiduciary obligations of utmost good faith and full disclosure to inform Plaintiff and the Class about legal events material to client's or prospective client's evaluation of the adviser's integrity. Such affirmative obligations are imposed by rules and regulations of the Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), and pursuant to the Investment Advisers Act of 1940, ¶2, including Item 9 of the General Instructions for Part 2 of Form ADV and 17 CFR Parts 275 and 279 [SEC Release No. IA-3060] ("***Item 9 requires that an adviser disclose in its brochure material facts about any legal or disciplinary event that is material to a client's (or prospective client's) evaluation of the integrity of the adviser or its management personnel.***") ("SEC Release No. IA-3060") ¶11 (emphasis added). Declaration of Barbara Podell at Exhibit A ("Exhibit A"). The integrity and honesty of financial advisers is presumptively material to their

---

[4] Defendants acknowledge Plaintiff's "non-fraud" claims. ECF 51 at 14, 19.

clients. ¶2. As Defendants acknowledge, Plaintiff's claims do not relate "***in any material way to the trading or operation of YES***" and are "***unrelated to particular investments.***" ECF 51 at 22, 23 (emphasis added). Instead, Plaintiff's claims relate to his ability to evaluate Defendants' integrity when deciding to choose a YES account and the YES Team as his fiduciary advisers.

Plaintiff alleges that on March 1, 2017, the Individual Defendants commenced a confidential FINRA arbitration against their former employer, Credit Suisse, purportedly over various unvested contingent deferred awards they left behind when they went to UBS. ¶23. On June 21, 2017, Credit Suisse filed counterclaims in the confidential FINRA arbitration against the Individual Defendants, alleging breach of contract, breach of fiduciary duty, misappropriation of confidential information, and unjust enrichment. In preparing its defense in the confidential FINRA arbitration, Credit Suisse discovered that the Individual Defendants "had used their personal and Credit Suisse email accounts to steal substantial amounts of valuable confidential information relating to Credit Suisse's business and clients, apparently for use in their new jobs at UBS. The stolen documents included confidential Credit Suisse performance analytics and related materials concerning a proprietary investment strategy offered to Credit Suisse clients (known as the 'Yield Enhancement Strategy' or 'YES') as well as confidential client account information, including investment strategies and account totals, for some Credit Suisse clients." ¶24.

The facts about the material "legal events" were buried in the ancillary New York Supreme Court Discovery Proceeding filed by the Individual Defendants seeking to discover Credit Suisse's insurance coverage relating to the confidential FINRA arbitration filed by the Individual Defendants over a compensation dispute. ¶¶20-24; ECF 52-7. Because arbitration is generally confidential, and documents submitted in arbitration are not publicly available, Plaintiff and the Class could not discover the theft and constructive discharge alleged in the FINRA confidential arbitration unless Defendants complied with their affirmative and ongoing obligations to disclose

material information about legal events relating to Defendants' integrity. UBS and the YES Team did not do so. ¶27.

Plaintiff would have no reason to suspect that any of these proceedings about insurance coverage and compensation disputes would contain buried facts about constructive discharge or theft by the YES Team. There is nothing in the subject matter of the New York Discovery Proceeding which would put Plaintiff or any UBS client on notice that they could discover facts about Defendants' integrity in that Proceeding. Plaintiff and the Class could not have discovered Defendants' breaches of their affirmative fiduciary duty through the exercise of reasonable due diligence.

Plaintiff alleges that UBS and the YES Team have an ongoing affirmative obligation to update their ADV forms to inform clients of any "material information that could affect the advisory relationship." ¶30. Neither UBS nor the YES Team disclosed the currently pending FINRA arbitration claims against the YES Team or the "legal events" impacting the integrity of the YES Team until they disclosed in their BrokerChecks the filing of this action on December 5, 2021— almost five years after the confidential FINRA arbitration was filed. ¶31.

Plaintiff alleges that FINRA's BrokerCheck website states: "BrokerCheck helps you make informed choices about brokers and brokerage firms and provides easy access to investment adviser information. (https://brokercheck.finra.org/. Accessed March 14, 2022). None of the Individual Defendants disclosed the pending FINRA arbitration against Credit Suisse and the counterclaim against the YES Team in their FINRA BrokerCheck forms, even though each Individual Defendant disclosed in their FINRA BrokerCheck forms numerous pending FINRA arbitrations in which the allegations had not yet been proven. Members of the YES Team did not disclose any facts alleged in this Action relating to the confidential FINRA arbitration until they

disclosed in their BrokerChecks the Dec. 5, 2021, filing of this action --- after the confidential FINRA arbitration had been pending for almost five years. ¶32.

Plaintiff alleges that the Broker Check website states: "BrokerCheck does not have information regarding civil litigation not involving investments, civil protective orders, criminal matters unless they are felonies, or misdemeanors that are investment-related or involve theft or a 'breach of trust.' *Consider doing an internet search to check for that type of information*." (emphasis added). The Individual Defendants' "constructive discharge" by Credit Suisse and the counterclaim in the confidential FINRA arbitration alleging theft and challenging Defendants' integrity and honesty cannot be found through an internet search of UBS' or the Individual Defendants' names. ¶33.

Plaintiff alleges that the FINRA website states: "FINRA's Arbitration Awards database enables users to perform Web-based searches for FINRA and historical NASD arbitration awards free of charge, seven days a week." (https://www.finra.org/arbitration-mediation/arbitration-awards. Accessed March 14, 2022). There is no public award, ruling, appeal or any resolution of the confidential FINRA arbitration initiated by the YES Team or the counterclaim filed against them by Credit Suisse. Plaintiff alleges upon information and belief and based on Defendants' representation in their first motion to dismiss, ECF 44 at 30, that the arbitration is still "pending" after almost five years. ¶34. A legal proceeding of such longevity is a complex and material "legal event" requiring disclosure pursuant to SEC Release IA-3060 and other regulations.

Plaintiff alleges that UBS and the YES Team failed to comply with their affirmative and ongoing obligation of utmost good faith and full disclosure to disclose in any of the required sources – UBS' Amendment to the Advisory Relationship Agreement and Form ADV Disclosure Brochure relating to the UBS YES account, the SEC's Investor Adviser Public Disclosure website at Investor.gov/CRS, FINRA's BrokerCheck system and www.adviserinfo.sec.gov – or any other

source, the material facts alleged in the Amended Complaint. ¶35. Plaintiff alleges that these are the only public sources available to investors using reasonable due diligence to search for and find the required disclosures of material facts about investment advisory firms and their financial advisers, including material "legal events" impacting clients' evaluation of their integrity. This is where financial advisers' clients look for material information about their advisers. If the financial advisers do not comply with their affirmative disclosure obligations mandated by regulations, clients will not be able to discover material information using reasonable due diligence and make informed decisions about the integrity of their advisers when they are opening or maintaining accounts. ¶35.

Plaintiff alleges upon information and belief that the New York Supreme Court Discovery Proceeding cannot be discovered through an internet search by entering the names of the Defendants and could not have been discovered by UBS clients through the exercise of reasonable diligence. Plaintiff would have had to follow a long, circuitous path to discover the material "legal events" alleged herein because they were buried in a pleading in a discovery proceeding tangential to the confidential FINRA arbitration relating to a compensation dispute. On their face, these documents would not put Plaintiff on notice of the allegations of theft and constructive discharge. As such, the "legal events" were unavailable to Plaintiff and the Class through the exercise of reasonable due diligence. ¶36.

## ARGUMENT

### I.  Plaintiff's Claims Are Not Barred By SLUSA

Plaintiff's claims are not barred by SLUSA. Plaintiff's allegations that Defendants breached their affirmative and ongoing fiduciary obligations mandated by federal rules and regulations, including SEC Release No. IA-3060, and retain substantial non-trading flat fees improperly gained by opening invalid and void account agreements, satisfy Second Circuit

authority holding that the claims of breach of a "duty-based obligation" for unearned fees on invalid and voidable agreements are not precluded by SLUSA. *See Kingate*, 784 F.3d at 152 (allegations within Group 4 which arise from breach of a "duty-based" obligation and Group 5, which are based on payments of fees which were not earned and/or improperly calculated are not precluded by SLUSA).

Plaintiff does not allege false conduct by Defendants "*in connection with the purchase or sale of a covered security,*" but rather an explicit breach of an affirmative and ongoing fiduciary duty imposed by SEC Release No. IA-3060, among other regulatory mandates. ¶¶11, 25, 27-34. *See e.g.*, *Kingate*, 784 F. 3d at 148 ("SLUSA applies only to allegations of conduct by the defendant that would violate the anti-falsity provisions of the 1933 and 1934 Acts that are referenced in SLUSA's operative provisions"); *Hauptman v. Interactive Brokers, LLC*, 2018 WL 4278345, at *6 (S.D.N.Y June 12, 2018) ("Plaintiffs' remaining substantive claims—promissory estoppel, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and negligence—are also not precluded by SLUSA because they do not 'rely on false conduct.'"); *Fishman v. Phila. Fin. Life Assurance Co.*, 2016 WL 2347921, at *13 (S.D.N.Y. May 3, 2016) (claims for promissory estoppel, breach of the implied covenant of good faith and fair dealing, and unjust enrichment not precluded by SLUSA).

Defendants incorrectly argue, contrary to *Kingate*, 784 F. 3d at 152, that every time an investment account is opened with the expectation to trade covered securities, SLUSA precludes all state- based claims. ECF 51 at 17-18. Defendants' theory ignores the fact that in *Kingate*, SLUSA did not preclude certain state law claims unrelated to the purchase or sale of covered securities, even though there was an underlying investment account. The claims which were not precluded by SLUSA did not allege fraud or "false conduct," but instead alleged a breach of an

independent duty-based obligation and "compensation for fees paid." *Kingate*, 784 F. 3d at 151-52.

*Kingate* held that SLUSA did not preclude the claims in Group 4 which "predicate liability on Defendants' breach of contractual, fiduciary, and/or tort-based duties to Plaintiffs to provide competent management, consulting, auditing, or administrative services to the Funds" and "do not require a showing of false conduct," *id.* at 151-52, or the claims in Group 5 asserting that "Plaintiffs are entitled to compensation for fees paid" and "do not require a showing of false conduct." *Id.* at 152. In contrast, where plaintiffs' claims alleged fraud or false conduct, *Kingate*, held that SLUSA precludes claims in Group 1, which predicate liability on "charges that Defendants fraudulently made misrepresentations and misleading omissions regarding the Funds' investments with Madoff and their oversight of the Funds' investments;" Group 2 claims which "premise liability on Defendants' negligent misrepresentations and misleading omissions in connection with the Funds' investments with Madoff and with oversight of Madoff's operations;" and Group 3 claims which "charge that Defendants aided and abetted . . .the frauds described in Group 1." *Id.* at 151.

Defendants also conflate courts' analyses of "covered securities" with the "in connection with" analysis to argue that if a plaintiff expected to invest in "covered securities," but the account did not invest in such securities or no investments were made at all such as in the Madoff cases, SLUSA precludes the claims. ECF 51 at 18. However, the cases upon which Defendants rely do not support their argument because those cases analyze the meaning of "covered securities" rather than "in connection with a purchase or sale" and/or are Madoff feeder fund cases based fundamentally on fraud to recover trading losses – neither is applicable here. *See Kingate*, 784 F.3d at 152 (SLUSA does not preclude claims in a Madoff feeder fund case where "[t]he asserted liability of Defendants under these claims [Group 4] arises from the fact that Defendants breached their contractual and duty-based obligations to Plaintiffs. Proof of these claims would not require

any showing of false conduct on the part of Defendants."); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 431 (S.D.NY. 2010) (SLUSA precludes state laws claims of false conduct in a Madoff feeder fund case "based on the same underlying transactions alleged under a theory of securities fraud, which the Court has allowed to proceed" and analysis of whether "covered security" was involved, holding that misrepresentations related to non-covered limited partnership interests may be nonetheless "in connection with" covered securities where the Funds were created for the purpose of investing in such securities, *id*. at 430); *Newman v. Fam. Mgmt. Corp.*, 748 F. Supp. 2d 299, 313 (S.D.N.Y. 2010), *aff'd*, 530 F. App'x 21 (2d Cir. 2013) (SLUSA precludes claims in a Madoff feeder case analyzing meaning of "covered securities" because "[a]lthough the shares of the FM Fund are not covered securities, the objective of the Fund was to manage Plaintiffs' investment using multiple strategies, including substantial investment in a 'large cap strategy' that explicitly involved the purchase and sale of covered securities."); *Marchak v. JP Morgan Chase & Co.*, 84 F. Supp. 3d 197, 219, 220 (E.D.N.Y. 2015) (SLUSA precludes state claims in a Ponzi case where Plaintiffs concede that several of the seven causes of action sound in fraud, because "fraud is an integral part of the conduct on the part of Barry that gives rise to the claim" and "the allegations centered around Defendants' assistance and furtherance of Barry's fraud satisfies the 'misrepresentation or omission' requirement, and the allegations connecting that fraud to covered securities are sufficient to meet the 'in connection with' requirement."); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 343 (S.D.N.Y. 2016) (SLUSA precludes state claims in a Madoff feeder fund case where "the Amended Complaint's theory of liability is that HSBC was complicit and/or assisted in perpetuating Madoff's fraud, and thus Plaintiffs' claims are precluded by SLUSA."); *In re Primeo and Thema Herald*, 730 F. 3d 112, 119 (2d Cir. 2013) (SLUSA precludes state claims in a Madoff feeder fund case where "[t]he complaints, fairly read, charge that JPMorgan and BNY knew of the fraud, failed to disclose the fraud, and helped the fraud

succeed—in essence, that JPMorgan and BNY were complicit[] in Madoff's fraud."); *In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 572-573 (S.D.N.Y 2012) (Plaintiff's breach of fiduciary duty claim was precluded by SLUSA because it "sounds in fraud" and a corporation does not owe a fiduciary duty to shareholders); *Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 417 (S.D.N.Y 2003) ("To the extent that 'switching' refers to a practice of deceitfully inducing plaintiff to buy a new annuity, this cause of action is simply another way of alleging misrepresentation or fraud in connection with the sale of the Variable Annuity.")

Defendants' theory of SLUSA preclusion also ignores their factual admission that "***[b]oth omissions relate to an employment dispute over deferred compensation between the YES Team and Credit Suisse: neither relates in any material way to the trading or operation of YES many years later at UBS***," ECF 51 at 22, and Plaintiff's claims are "***unrelated to particular investments.***" ECF 51 at 23 (emphasis added). Defendants' statement of the facts in this case supports Plaintiff's argument that his claims are not "in connection with the purchase or sale of a covered security." Therefore, neither the law nor the facts support SLUSA preclusion of Plaintiff's claims.

## II.     Plaintiff's Claims Are Timely

### A.     The Affirmative Defense of Statute of Limitations
Should Not be Decided on a Motion to Dismiss

It is inappropriate at the motion to dismiss stage for the Court to determine at what point Plaintiff should reasonably have known of the claims he alleges. *See In re Integrated Resources Real Estate Limited Partnerships Securities Litig.*, 815 F. Supp. 620, 638 (S.D.N.Y.1993) (holding that the question of whether a plaintiff reasonably exercised due diligence after being placed on inquiry notice of securities fraud is "usually a question of fact for the jury to decide"); *In re Global*

*Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003) ("it is a question of fact for ultimate resolution at trial (or on summary judgment if the factual record permits only one conclusion) whether plaintiffs in the exercise of reasonable diligence would have discovered the facts underlying the present claim more than one year before those claims were asserted"); *Harrison v. Rubenstein*, 2007 WL 582955, at *11 (S.D.N.Y. Feb. 26, 2007) (denying motion to dismiss on statute of limitations grounds).

Defendants' affirmative defense is premature and should not be decided on a motion to dismiss: regardless, the affirmative defense fails on the substantive grounds of equitable estoppel and, in the alternative, the six-year statutes of limitations applicable to his claims. Dismissal of a complaint based on an affirmative defense at the pleading stage is warranted only if "it is clear from the face of the complaint and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 435 (S.D.N.Y. 2018) (Woods, J). It is clear on the face of Plaintiff's Complaint that equitable estoppel applies or, in the alternative, that Plaintiff's claims are timely within the six-year statutes of limitations. *See* ¶¶31-37 (concealment without misrepresentation in a fiduciary relationship). Defendants are estopped from raising a statute of limitations defense because they did not comply with their fiduciary obligations and did not disclose the "legal events" alleged herein until *after* the filing of Plaintiff's complaint on December 5, 2021. ¶¶31, 32. According to Defendants, Plaintiff paid his first flat fee in October 2017, ECF 51 at 20-21, and Plaintiff filed suit less than six years later on December 5, 2021. ECF 1.

### B. Equitable Estoppel Applies to Defendants' Statute of Limitations Defense

While a breach of fiduciary duty accrues when the claim becomes enforceable, *IDT Corp.*, 12 N.Y.3d at 140, an "exception is the doctrine of equitable estoppel," which precludes a party

from raising a statute of limitations defense where the party's "wrongdoing 'produced the long delay between the accrual of the cause of action and the institution of the legal proceeding.'" *Horan*, 2021 WL 1200220, at *6. "Where concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship [] which gave the defendant an obligation to inform him or her of facts underlying the claim." *Zumpano v. Quinn*, 6 N.Y.3d 666, 675 (2006). *See also Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 395 (E.D.N.Y. 2018).

This is the case here, where Defendants are fiduciaries, and their breach of their regulatory disclosure obligations estops them from raising a statute of limitations defense. ¶50. *See Whitney Holdings*, 988 F. Supp. at 746 (a "failure to disclose facts underlying a claim, even without any affirmative acts of concealment, nevertheless may equitably estop a statute of limitations defense if the defendant stood in a fiduciary relationship which obligated the defendant to inform the plaintiff of such facts.").

"The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense." *Zumpano*, 6 N.Y.3d at 674 ("Our courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing ... which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding"). *See also Spinnato*, 322 F. Supp. 3d at 395 ("the doctrine of equitable estoppel requires ... that the defendant ma[k]e an actual misrepresentation or commit[] some other affirmative wrongdoing.") Plaintiff has alleged Defendants' breach of an affirmative disclosure obligation.

Plaintiff has also alleged that UBS and the YES Team required every UBS client who opened a YES account to sign and acknowledge that they read and understood the disclosure forms and agreements provided to all Class members in identical or virtually identical form. Defendants

required Plaintiff and the members of the proposed Class to sign these forms as a condition of opening a YES account. UBS's Amendment to the Advisory Relationship Agreement and Form ADV Disclosure Brochure provided in identical or virtually identical form to Plaintiff and the Class required every UBS client who chose a YES account to read, sign, acknowledge, and understand the terms and conditions of the Agreement and authorizing UBS and the YES Team to implement the YES Strategy. ¶38.

In addition, the UBS "Client Qualification Form and Agreement for Options" provided in identical or virtually identical form to Plaintiff and the Class required every UBS client who chose a YES options account to sign and acknowledge the "Important Representations" that "You have read, understand and agree to be bound by the terms and conditions set forth in the Agreement and all other documents included therewith or otherwise completed in connection with opening the Account." ¶39 The "Yield Enhancement Strategy Margin/Collateral Amendment" provided in identical or virtually identical form to Plaintiff and the Class required every UBS client who chose a YES options account to sign, acknowledge, and agree that they have "read, understand and agreed to the terms and conditions of the PMP Yield Enhancement Strategy Amendment to Advisory Relationship Agreement and Form ADV Disclosure Brochure." ¶39. *None of these forms disclosed the "legal events" alleged herein impacting Defendants' integrity.*

A party that seeks to invoke equitable estoppel "must demonstrate due diligence in bringing the cause of action and reasonable care in ascertaining facts which might have led to discovery of defendant's wrong." *Whitney*, 988 F. Supp. at 747. Plaintiff alleges that he and the Class could not have discovered the confidential FINRA counterclaim, the material facts of the YES Team's "constructive discharge" by Credit Suisse and the allegations of theft of confidential information using reasonable due diligence by review of the public disclosure sources mandated by federal law

and regulations or through internet searches because Defendants did not comply with their mandated disclosure obligations. ¶37. *See also* ¶¶35-36.

Defendants did not disclose the required "legal events' alleged herein until after Plaintiff disclosed them in his Complaint filed on December 5, 2021. ¶¶31, 32 (this suit was disclosed in the Individual Defendants' Broker Check forms after the suit was filed on Dec. 5, 2021). Plaintiff has alleged Defendants' affirmative and continuing fiduciary obligation of utmost good faith and full disclosure mandated by regulations, ¶¶25-31, Defendants' breach of those fiduciary duties and concealment without misrepresentation, ¶¶31-35, Plaintiff's reasonable reliance, ¶¶38-39, and Plaintiff's inability to discover the facts through the exercise of due diligence and reasonable care, ¶¶31-40. Therefore, Defendants are estopped from raising a statute of limitations defense.

### C. In the Alternative, Plaintiff's Claims Are Subject to Six Year Statutes of Limitations

If the Court considers Defendants' affirmative defense, Plaintiff's claims are subject to six-year statutes of limitations. "Where . . . the relief sought is equitable in nature, the six-year limitations period of CPLR 213(1) applies." *Monaghan v. Ford Motor Co.*, 71 A.D.3d 848, 850 (2d Dept 2010). *Id*. at 850. *See, e.g.*, ¶¶4, 13, 42, 57, 61, 65. Fiduciary duty claims are "actions in equity." *Pereira v. Cogan*, 2002 WL 989460, at *3 (S.D.N.Y. May 10, 2002) While monetary damages are generally regarded as legal, "an award of monetary relief is not necessarily 'legal relief.'" *Swan Brewery Co. v. U.S. Tr. Co. of New York*, 143 F.R.D. 36, 41 (S.D.N.Y.1992). Instead, monetary damages may be considered equitable when "the damages sought are in the nature of restitution, as in actions for disgorgement of improper profits or money wrongfully withheld." *Id.* at 41. Since Plaintiff seeks restitution of flat (non-trading fees), the disgorgement of those fees and a constructive trust, the monetary relief claimed is equitable in nature. *See Webb v. RLR Assocs., Ltd.*, 2004 WL 555699, at *2 (S.D.N.Y. Mar. 19, 2004).

"Equity practice long authorized courts to strip wrongdoers of their ill-gotten gains," *Liu v. Sec and Exch. Comm*., 140 S. Ct. 1936, 1942 (2020). "Equity courts have routinely deprived wrongdoers of their net profits from unlawful activity." *Id*. *See* 1 Dan B. Dobbs, Law of Remedies: Damages Equity Restitution § 1(1), at 555 (2nd ed. 1993) (referring to "restitution" as the relief that "measures the remedy by the defendant's gain and seeks to force disgorgement of that gain"); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment *a*, at 204 (Am. Law Inst. 2011) (Restatement (Third)) ("Restitution measured by the defendant's wrongful gain is frequently called 'disgorgement.'"). "No matter the label, this 'profit-based measure of unjust enrichment,' Restatement (Third) § 51, Comment *a*, at 204, reflected a foundational principle: '[I]t would be inequitable that [a wrongdoer] should make a profit out of his own wrong,'" *Liu*, 140 S. Ct. at 1943, citing *Root v. Lake Shore & M.S. Railway Co.*, 105 U.S. 189, 207 (1881). "A remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts." *Liu*, 140 S. Ct. at 1943. Disgorgement takes money out of the wrongdoer's hands while restitution 'restor[es] the status quo,' thus situating the remedy squarely within the heartland of equity." *Id*.

According to Defendants, Plaintiff first paid flat fees on his Mandate amount in October 2017. ECF 51 at 20-21. The Complaint was filed on December 5, 2021, within the applicable six-year statutes of limitations. *Access Point Med., LLC v. Mandell*, 106 A.D.3d 40 (App. Div. 2013), cited by Defendants, is factually distinguishable because plaintiffs in that case sought return of legal fees they paid to the defendant attorneys who had a conflict of interest, while Plaintiff and the Class here do not seek their trading losses, but instead seek only the flat fees that UBS improperly collected on invalid and void accounts opened in violation of their affirmative and ongoing fiduciary duties mandated by regulations, including SEC Release IA-3060. ‼

Plaintiff's unjust enrichment claim is also subject to a six-year statute of limitations. *See Golden Pac. Bancorp v. F.D.I.C.*, 273 F. 3d 509, 518 (2d Cir. 2001) ("The statute of limitations in New York for claims of unjust enrichment, breach of fiduciary duty, corporate waste, and for an accounting is generally six years."). "The statute of limitations on an unjust enrichment claim begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution." *Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134 (N.Y. App. Div. 2007). In this case, the first payment of a flat fee was in October 2017 and Plaintiff's Complaint was filed on December 5, 2021, well within the six-year statute of limitations.

Defendants argue that Plaintiff's unjust enrichment claim fails because "it is duplicative of Plaintiff's fiduciary and aiding and abetting claims." ECF 51 at 21, n.6. That is factually incorrect because Plaintiff's unjust enrichment claim alleges that "the opening of the YES accounts" was "invalid and void," thus rendering Defendants' receipt and retention of flat fees unjust and against equity and good conscience. ¶64. There is no duplication or replacement of a contract or tort claim, as Defendants suggest. Therefore, Plaintiff's breach of fiduciary duty, aiding and abetting and unjust enrichment claims are subject to six- year statutes of limitations and his claims are timely.

## III.    PLAINTIFF HAS ALLEGED ACTIONABLE CLAIMS

### A.    Defendants Had a Disclosure Obligation That Was Mandated By Regulations

Plaintiff alleges that in violation of regulations, including SEC Release IA-3060, Defendants did not disclose a "legal event" material "to a client's or prospective client's evaluation of the advisory business or the integrity of its management." ¶29. SEC IA-3060 is an explicit regulatory mandate to which the Defendants are subject. The YES Team's constructive discharge and accusations against them of theft of confidential information relating to YES are "legal events" which go to the heart of their integrity as fiduciaries.

Defendants argue, without support, that they are "not obligated to disclose the existence of mere unproven and conclusory allegations," ECF 51 at 22, relying on inapposite and factually distinguishable cases to make this argument. *See Barron Partners LP v. LAB123 Inc*., 593 F. Supp. 2d 667, 673 (S.D.N.Y. 2009) (there was no fiduciary relationship between the parties and the 17-year-old consent decree and guilty plea related to a partner of the plaintiff investor, not the defendant, making it irrelevant to the defendant's decision to accept the plaintiff's $2 million investment); *Harrison*, 2007 WL 582955, at *13 (holding is unrelated to the regulatory mandates of SEC IA-3060 and others in this case, ¶¶2, 9, 11, 25-31, because, in *Harrison*, "Defendants' failure to disclose publicly any mismanagement that may have occurred at Cornerstone was not a violation of federal securities law") (emphasis added).

Contrary to Defendants' argument, there are an array of obligations, including SEC Release IA-3060, which require them to inform clients and prospective clients of the "legal events" alleged herein. Defendants argue incorrectly, based on a mischaracterization of SEC Release IA-3060, that such Release does not require disclosure of the New York Discovery Proceeding and counterclaim by Credit Suisse alleging theft of confidential information relating to YES and the YES Team's constructive discharge by their former employer because the Release "does not require disclosure of arbitration awards." ECF 51 at 22. SEC Release IA-3060 is unequivocal that "*Item 9 requires that an adviser disclose in its brochure material facts about any legal or disciplinary event that is material to a client's (or prospective client's) evaluation of the integrity of the adviser or its management personnel. These requirements incorporate into the brochure the client disclosure regarding disciplinary information required by rule 206(4)-4 under the Advisers Act.*" Exhibit A at 22 (emphasis added). The specific list of disclosure items in Items 9 A, B and C "do not constitute an exhaustive list of material disciplinary events." ("Items 9.A, B, and C provide a list of disciplinary events that are presumptively material if they occurred in the previous

10 years. Item 9 cautions advisers, however, that the events listed in that item are those that are presumed to be material and *do not constitute an exhaustive list of material disciplinary events.*") Ex A at 23 (emphasis added).

The full section of SEC Release IA-3060, which Defendants selectively quote, states: "Others objected, with some reasoning that arbitration claims are easy to make and that arbitration settlements and awards may not necessarily include findings of wrongdoing (*i.e.*, parties may settle arbitration proceedings and/or arbitration awards may be granted even in the absence of legal violations). For this reason, we have determined not to require disclosure of arbitration awards in the client brochure. *Advisers should, however, carefully consider whether particular arbitration awards or settlements do, in fact, involve or implicate wrongdoing and/or reflect on the integrity of the adviser, and should be disclosed to clients in the brochure or through other means*." Ex A at 25 (emphasis added). The arbitration claims referred to as "easy to make" are consumer/customer arbitrations, not the pending arbitration and counterclaim among financial advisers (Credit Suisse and the YES Team) or the New York Discovery Proceeding at issue in this case. *See* Ex A at 25 at n. 93. In this case, the arbitration between the YES Team and Credit Suisse is clearly a material "legal event" requiring disclosure because it has been pending for almost five years without resolution − longer than many complex litigation actions in federal courts.

SEC Release IA-3060 further provides that "advisers that seek to exclude information from their brochures because they believe that they can rebut the presumption of materiality must memorialize the basis for that determination, which is subject to review by our staff." Ex A at 24-25. Further, the Release states that: "*We note that failure to disclose material information to clients constitutes a violation of section 206 of the Advisers Act.*" Ex A at 25 at n. 94 (emphasis added).

In addition, "Item 9 requires that *an adviser must disclose if it (or any of its management persons) has been involved in one of the events listed in that item.* "Involved" is defined as

"[e]ngaging in any act or omission, aiding, abetting, counseling, commanding, inducing, conspiring with or failing reasonably to supervise another in doing an act." Ex A at 26 (emphasis added). The SEC concludes: "*we are adopting the proposed requirement that the brochure affirmatively disclose disciplinary information about the adviser and its management personnel*." Ex A at 27. Plaintiff alleges that UBS and the Individual Defendants are involved in a material legal event impacting a client's evaluation of their integrity.

Defendants also cite the Broker Check website which directs clients and potential clients to "consider doing an internet search to check" for "civil litigation not involving investments." ECF 51 at 23. *See also* ¶33. Plaintiff alleges that "the New York Supreme Court Discovery Proceeding cannot be discovered through an internet search by entering the names of the Defendants and could not have been discovered by UBS clients through the exercise of reasonable diligence. ¶36. Defendants also direct the Court to the FINRA Arbitration Awards Online website, ECF 51 at 23, but there has been no award in the almost 5-year confidential arbitration between the YES Team and Credit Suisse, whose longevity is evidence of its complexity and materiality to a client's decision to entrust their funds to the YES Team. *See* ¶34.

Defendants refer to the Individual Defendants' ADV Brochure Supplements, which "exclude[] matters that are not required to be reported by investment advisers, such as pending complaints and arbitrations." ECF 51 at 13, 23. However, Defendants omit the next paragraph, which states: "As our Financial Advisors operate as both broker-dealers and investment advisers, the *legal* and disciplinary information in this report is not the only resource you can consult. In addition to the information in this report, you can access information about Matthew Stern Buchsbaum on the SEC's website, www.adviserinfo.sec.gov, as well as the FINRA's website, www.finra.org/brokercheck, by entering Matthew Stern Buchsbaum's name into the corresponding search link." ECF 52-17 at 10 (emphasis added). *See also* ECF 52-17 at 20, 30, 40.

Despite Defendants' cite to www.adviserinfo.sec.gov, the New York Discovery Proceeding and the counterclaim alleging theft are nowhere to be found on these websites. *See* ¶¶35-37.

### B.     The Constructive Discharge and Alleged Theft of Confidential Information Were Not Publicly Available

Despite the complete dearth of disclosure on any of the required various regulatory sources or on the internet, Defendants improperly assert without any factual basis and contrary to Plaintiff's allegations, ¶¶31-40, that the "subject omissions were all publicly available before Plaintiff enrolled in YES on August 29, 2017." ECF 51 at 23.

None of the articles cited by Defendants mention the YES Team or the Individual Defendants. Instead, the articles relate to Credit Suisse's FINRA arbitration "raiding" claim against UBS and the appropriate jurisdiction for disputes between Credit Suisse and its former financial advisers. ECF 52 -8, 9 and 10. All of the articles should be disregarded because they do not mention any of the Defendants or the specific allegations in Plaintiff's Amended Complaint. ECF 52-4, 5 and 6. *See*, *e.g.*, *Global Network Comm's, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006).[5] These articles are neither integral nor related in any way to the allegations in the Amended Complaint, nor does the Amended Compliant rely on them at all. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006) ("[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") The case upon which Defendants rely in support of the Court's consideration of the articles is inapposite because no facts alleged in the Amended Complaint can be ascertained from any of the articles. *See Washington v. State Farm Mut. Auto Ins. Co.*, 2021 WL 5028796, at *8 (Tex. App. Oct. 28, 2021)

---

[5] Contrary to Defendants' assertion, ECF 51 at 9, the articles mentioning the "widely and publicly reported closure of Credit Suisse's domestic private wealth business in late 2015," are completely silent about the YES Team and the Individual Defendants.

(court did not take judicial notice where the facts "cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") *See also Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).

Defendants argue that Plaintiff could have found the concealed facts on the New York Supreme Court's website. ECF 51 at 10-11, 23. Defendants' argument improperly assumes the fact that Plaintiff or any UBS client would have known or had any reason to search the New York Supreme Court website, as opposed to any other state or federal courts' websites. In effect, Defendants argue that Plaintiff and members of the Class should have searched the websites of every court in the United States to find a legal proceeding involving the UBS and/or the Individual Defendants relating to their integrity. Reasonable due diligence should not extend that far.

It is likely that Defendants' faulty assumption explains why Broker Check suggests that clients and potential clients "consider *doing an internet search* to check" for "civil litigation not involving investments," ¶33 (emphasis added), rather than a court-specific website search. Indeed, the articles attached to Defendants' motion reveal that cases relating to financial advisers' disputes with Credit Suisse were filed in Florida, Illinois and Texas, just to name a few. *See* ECF 52-8,9, and 10. Because all of these cases referred to in the articles relate to compensation disputes between Credit Suisse and its former financial advisors, Plaintiff and the Class would have had no reason, based on the so-called "publicly available" information upon which Defendants rely, to search these cases for "legal events' relating to the YES Team's integrity or to hunt for buried accusations of theft of confidential information relating to YES in courts throughout the country.

The information in the articles about compensation disputes and corporate raiding, which does not even mention the Individual Defendants or YES, would not point Plaintiff or any UBS client in the right direction to discover the "legal events" impacting the Individual Defendants' integrity. This fact is established by Defendants' concession that "*[b]oth omissions relate to an*

*employment dispute over deferred compensation between the YES Team and Credit Suisse: neither relates in any material way to the trading or operation of YES many years later at UBS*." ECF 51 at 22 (emphasis added).

Finally, even reasonable due diligence using the mandated regulatory sources, the internet or the sources suggested by Defendants that would not exonerate Defendants from their mandated obligations as a fiduciary pursuant to, among others, SEC Release IA-3060 to disclose "*material facts about any legal or disciplinary event that is material to a client's (or prospective client's) evaluation of the integrity of the adviser or its management personnel.*" (Emphasis added). SEC Release IA-3060 imposes a free-standing, affirmative disclosure obligation, regardless of whether a media source or some other source contains a public disclosure. There is nothing in SEC Release IA-360 that provides an exemption to fiduciary financial advisers if the required disclosure appears in another source or location or is made by another party.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion to dismiss be denied in its entirety.

DATED: May 19, 2022                                  Respectfully submitted,

                                                                  **KIRBY McINERNEY LLP**

                                                                  /s/ *Ira M. Press*
                                                                  Ira M. Press
                                                                  Nicole A. Veno
                                                                  250 Park Avenue, Suite 820
                                                                  New York, New York 10177
                                                                  Tel:    (212) 371-6600
                                                                  Email: ipress@kmllp.com
                                                                           nveno@kmllp.com

                                                                  *Liaison Counsel for Plaintiff Christian Dumontet*
                                                                  *and the Proposed Class*

**BERGER MONTAGUE PC**
Michael Dell'Angelo (SBN 032581997)
Barbara A. Podell
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel:    (215) 875-3000
Email: mdellangelo@bm.net
        bpodell@bm.net

*Counsel for Plaintiff Christian Dumontet and the Proposed Class*