**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHRISTIAN DUMONTET, Individually and on
behalf of all those similarly situated,

        Plaintiff,

    v.

UBS FINANCIAL SERVICES, INC., MATTHEW
S. BUCHSBAUM, SCOTT M. ROSENBERG,
GERARD COSTELLO and SONIA M. ATTKISS,

        Defendants.

---

No. 1:21-cv-10361 (GHW) (GWG)

**ORAL ARGUMENT REQUESTED**

**[REDACTED] MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................1

OVERVIEW OF THE AMENDED COMPLAINT ......................................................................3

    **A.**    The YES Strategy .................................................................................3
    **B.**    The YES Team brings an employment dispute against Credit Suisse....................4
    **C.**    In Fall 2017, Plaintiff opens his YES account and begins paying YES fees...........6
    **D.**    Plaintiff files the instant action in December 2021...................................8
    **E.**    The Amended Complaint.................................................................9

ARGUMENT...........................................................................................................9

I.     THE AMENDED COMPLAINT REMAINS BARRED BY SLUSA. .............................9
    A.    There is no dispute regarding four of SLUSA's five elements..............................10
    B.    Plaintiff's argument regarding the "in connection with" element fails. ................11

II.    PLAINTIFF'S AMENDED CLAIMS ARE STILL TIME-BARRED............................14

III.   THE AMENDED COMPLAINT FAILS TO ALLEGE AN ACTIONABLE
     OMISSION. .........................................................................................17

CONCLUSION.......................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Access Point Med., LLC v. Mandell*,
  963 N.Y.S.2d 44 (N.Y. App. Div. 2013) ..........................................................14, 15

*Araujo v. John Hancock Life Ins. Co.*,
  206 F. Supp. 2d 377 (E.D.N.Y. 2002) ...................................................................3

*Arista Records L.L.C. v. Lime Group L.L.C.*,
  532 F. Supp. 2d 556 (S.D.N.Y. 2007)....................................................................5

*Barron Partners, LP v. LAB123, Inc.*,
  593 F. Supp. 2d 667 (S.D.N.Y. 2009)...................................................................17

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010)...................................................................13

*Beaumont v. Citibank (S. Dakota) N.A.*,
  No. 01 CIV. 3393 (DLC), 2002 WL 483431 (S.D.N.Y. Mar. 28, 2002)...........................3, 16

*In re Briscoe*,
  448 F.3d 201 (3d Cir. 2006)..............................................................................16

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
  516 F. Supp. 3d 370 (S.D.N.Y. 2021)...................................................................16

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)................................................................................3

*Harrison v. Rubenstein*,
  No. 02 Civ. 9356 (DAB), 2007 WL 582955 (S.D.N.Y. Feb. 22, 2007) ................................17

*In re Herald*,
  730 F.3d 112 (2d Cir. 2013)...........................................................................11, 13

*Hill v. HSBC Bank plc*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016)...................................................................13

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005)...............................................................................4

*Hudson v. Delta Kew Holding Corp.*,
  992 N.Y.S.2d 158, 2014 WL 1924324 (Sup. Ct. 2014)....................................................15

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
 12 N.Y.3d 132 (N.Y. 2009) ...........................................................................................14, 15

*Ingrami v. Rovner*,
 847 N.Y.S.2d 132 (N.Y. App. Div. 2007) ...............................................................................16

*In re Kingate Management Ltd. Litigation*,
 784 F.3d 128 (2d Cir. 2015)..............................................................................................2, 11, 12

*Marchak v. JP Morgan Chase & Co.*,
 84 F. Supp. 3d 197 (E.D.N.Y. 2015) ......................................................................................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
 547 U.S. 71 (2006)..................................................................................................................12

*Miller v. Metro. Life Ins. Co.*,
 979 F.3d 118 (2d Cir. 2020).....................................................................................................2

*Miller v. Metro. Life Ins. Co.*,
 17 Civ. 7284, 2018 WL 5993477 (S.D.N.Y. Nov. 15, 2018) ..................................................2

*Newman v. Fam. Mgmt. Corp.*,
 748 F. Supp. 2d 299 (S.D.N.Y. 2010).....................................................................................13

*Rodriguez v. SLM Corp.*,
 2009 WL 598252 (D. Conn. Mar. 6, 2009) ...........................................................................16

*Schnall v. Marine Midland Bank*,
 225 F.3d 263 (2d Cir. 2000)................................................................................................3, 16

*Shak v. JPMorgan Chase & Co.*,
 156 F. Supp. 3d 462 (S.D.N.Y. 2006).....................................................................................15

*In re Stillwater Cap. Partners Inc. Litig.*,
 851 F. Supp. 2d 556 (S.D.N.Y. 2012)....................................................................................10

*Williams v. A & E Television Networks*,
 122 F. Supp. 3d 157 (S.D.N.Y. 2015).................................................................................3, 16

*Winne v. Equitable Life Assurance Society of U.S.*,
 415 F. Supp. 2d (S.D.N.Y. 2003)...........................................................................................10

*Zweiman v. AXA Equitable Life Ins. Co.*,
 146 F. Supp. 3d 536 (S.D.N.Y 2015)...............................................................................10, 12

## STATUTES

15 U.S.C. 78bb(f)(1) .........................................................................................................1, 10, 13

15 U.S.C. 78bb(f)(5)(B)(i)(I) ...........................................................................................10

15 U.S.C. 78bb(f)(5)(E) ...................................................................................................11

15 U.S.C. § 77r(b) ............................................................................................................11

## RULES

N.Y. C.P.L.R.
    § 213(1)...........................................................................................................14
    § 214(4)...........................................................................................................14

Fed. R. Civ. P.
    12(b)(1) ..........................................................................................................2, 3
    12(b)(6) ..................................................................................................2, 3, 16

Fed. R. Evid.
    201(b)(2) .............................................................................................................4

## REGULATIONS

SEC Release No. IA-3060 ...............................................................................................17

Defendant UBS Financial Services Inc. ("UBS"), together with Defendants Matthew S. Buchsbaum, Scott M. Rosenberg, Gerard Costello, and Sonia M. Attkiss (collectively the "Individual Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's Amended Class Action Complaint ("Amended Complaint") (Ex. A, ECF No. 46, cited as "¶__") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiff's original Complaint asserted putative class action claims relating to an actively-managed options trading strategy offered by UBS, known as the "Yield Enhancement Strategy" ("YES").  On February 22, 2022, Defendants moved to dismiss the Complaint, noting that it asserted (1) putative class action claims (2) under New York state law (3) arising out of alleged misrepresentations and omissions made by Defendants (4) in connection with Plaintiff's decision to open a YES account, (5) which he admittedly knew would involve the "purchase and sale" of "covered securities" under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). (*See* Compl.)  This, Defendants maintained, was precisely the type of claim barred by SLUSA, which prohibits plaintiffs from pursuing common law class action claims arising out of alleged misrepresentations or omissions made "in connection with the purchase or sale of covered securities."  15 U.S.C. § 78bb(f)(1).

Plaintiff literally had no answer to Defendant's motion.  Instead, and quite tellingly, Plaintiff abandoned the original Complaint in favor of an Amended Complaint.  But the Amended Complaint does nothing to cure the fatal defects in Plaintiff's claims.  Instead, Plaintiff simply repackages, and reasserts, what remains of the very same (1) putative class action claims (2) based

---

[1]  Unless otherwise indicated, internal citations and quotation marks are omitted, all emphases are original and citations to "Ex.__" refer to exhibits to the Declaration of Kuangyan Huang, submitted herewith.

1

on the same New York state law (3) arising out of a subset of the same alleged omissions by the same Defendants (4) in connection with the same 2017 decision that Plaintiff made to open the same YES account, (5) which involved the trading of the same "covered securities" (S&P 500 Index options) left over from the original Complaint.  It comes as no surprise, therefore, that the Amended Complaint also is barred by SLUSA and must be dismissed pursuant to Federal Rule 12(b)(1).[2]

Like the original Complaint, the Amended Complaint fails for two additional but separate reasons.  First, the claims asserted in the Amended Complaint are time-barred and should be dismissed under Rule 12(b)(6).  All of the claims in the Amended Complaint are subject to a three-year statute of limitations under New York law, and all of those claims accrued no later than October 2017.  Plaintiff, however, did not file this action until December 5, 2021—more than four years after his claims accrued.

Second, the Amended Complaint should likewise be dismissed under Rule 12(b)(6) for failure to state a claim.  Plaintiff's claims rest entirely on two alleged omissions by Defendants: that Defendants allegedly failed to disclose that (1) members of the YES Team had purportedly been "constructively discharged" from their former employer, Credit Suisse; and (2) Credit Suisse had filed certain counterclaims against the YES Team members in an unresolved FINRA

---

[2]   The Second Circuit has not ruled definitively on whether SLUSA challenges are properly brought under Rule 12(b)(1) or 12(b)(6), *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 127 (2d Cir. 2020), but recent decisions suggest that 12(b)(1) is the more appropriate motion. *See In re Kingate Mgmt. Litig.*, 784 F.3d 128, 154 n.9 (2d Cir. 2015).  In practice, however, district courts have considered the distinction irrelevant because they are authorized to consider appropriate extrinsic material under either rule.  *Miller v. Metro. Life Ins. Co.*, 17 Civ. 7284, 2018 WL 5993477 at *3 (S.D.N.Y. Nov. 15, 2018) ("The distinction between considering dismissal on the basis of SLUSA preclusion pursuant to Rule 12(b)(1) or 12(b)(6) is, therefore, "academic, . . . because even when a [SLUSA] motion is considered under Rule 12(b)(6), the district court is authorized to consider matters outside the pleadings and to make findings of fact when necessary.").

arbitration related to deferred compensation and employment matters. But those alleged omissions, such as they are, are not actionable. There is no case, rule, or other authority requiring Defendants to make those disclosures. And, in any event, both matters were in the public domain before Plaintiff opened his YES account at UBS, putting Plaintiff on at least constructive notice of them.

**OVERVIEW OF THE AMENDED COMPLAINT**

Defendant UBS is a financial advisory services company that offers a variety of wealth management, financial advisory and brokerage services in the United States. (¶ 17.) The Individual Defendants (collectively, the "YES Team") manage and trade the YES strategy on a day-to-day basis. (¶¶ 17-18; Ex. B, YES Marketing Presentation at 15-16.[3]) Plaintiff is a former UBS private wealth management customer and YES investor. (¶ 16.)

A.    **The YES Strategy**

Plaintiff's claims relate to his investment in the YES strategy, which is available only to eligible wealth management customers of UBS. (¶ 1; Ex. C, ADV Amendment at 2.) YES is an "actively-managed investment strategy" that seeks to generate additional return for customers

---

[3]  When considering motions to dismiss for lack of jurisdiction under Rule 12(b)(1), the Court may consult materials outside of the pleadings in order to resolve the jurisdictional issue. *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 380 (E.D.N.Y. 2002). Similarly, when evaluating motions to dismiss brought under Rule 12(b)(6), the Court may consider documents that are "incorporated by reference" or otherwise "integral to the complaint." *Williams v. A & E Television Networks*, 122 F. Supp. 3d 157, 161 (S.D.N.Y. 2015). This consideration may extend to contracts, account statements, or other non-public documents. *See, e.g.*, *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (consulting plaintiff's credit card agreement and monthly statements); *Beaumont v. Citibank (S. Dakota) N.A.*, No. 01 CIV. 3393 (DLC), 2002 WL 483431, at *1 (S.D.N.Y. Mar. 28, 2002) (finding plaintiff's monthly bank statements were integral to his claims and therefore could be considered). The Court may also take judicial notice of regulatory filings and information already in the public domain. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (allowing consideration of "public disclosure documents required by law to be and which actually have been filed with the SEC" when ruling on a 12(b)(6) motion).

through the "strategic sale and purchase of S&P 500 Index options." (Ex. C, ADV Amendment at 1; Ex. B, YES Marketing Presentation at 21.) The program was designed to allow high net worth customers (like Plaintiff) to potentially "enhance" the existing "yield," or return, on their non-YES UBS investment accounts by adding an actively traded options account to their UBS portfolio. (Ex. B, YES Marketing Presentation at 2.) Rather than having to sell investments or bring new funds into UBS to pay for their option purchases and sales, YES customers pledged a portion of the assets in their other UBS accounts as "collateral" to cover any debits or losses in their YES accounts. (¶ 19; Ex. C, ADV Amendment at 1, 3.) This pledged collateral is known as the YES "Mandate." (¶ 19; Ex. C, ADV Amendment at 4.) YES customers paid UBS a YES management fee based on the Mandate amount. (¶ 19; Ex. C, ADV Amendment at 4.)

### B.    The YES Team brings an employment dispute against Credit Suisse.

The YES Team began working for UBS in late 2015 and started trading YES in early 2016. (¶ 22.) Before that, the YES Team worked at Credit Suisse. (¶¶ 21, 22.) The YES Team left Credit Suisse as part of a mass exodus of financial advisors due to the widely and publicly reported closure of Credit Suisse's domestic private wealth business in late 2015. (*See, e.g.*, Ex. D, Michael Wursthorn, *Credit Suisse Brokers Decamp for UBS*, WALL ST. J. (Nov. 19, 2015); Ex. E, Andrew Welsch, *UBS Recruiting Ignites Raiding Claim, Spoils Credit Suisse-Wells Fargo Deal*, ON WALL ST. (Dec. 17, 2015); Ex. F, Michael Wursthorn and Joann S. Lublin, *Credit Suisse Claims UBS Raided Staff*, WALL ST. J. (Dec. 21, 2015). [4])

---

[4] The Court may take judicial notice of these public articles and the New York Supreme Court website because these are facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also, e.g.*, *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("[A] court may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") (quoting Fed. R. Evid. 201(b)(2));

In March 2017, the YES Team filed a FINRA arbitration against Credit Suisse, alleging constructive discharge and other claims related to their former employment at Credit Suisse. (¶¶ 21, 23; Ex. G, Napoli Pet. at ¶¶ 3-4.)  In June 2017, Credit Suisse filed counterclaims against the YES Team, alleging misappropriation of confidential information and other torts related to compensation.  (¶ 24; Ex. G, Napoli Pet. at ¶ 5.)  The YES Team's arbitration was one of a number of similar, widely-reported disputes between Credit Suisse and its former financial advisors after the private bank was closed.  (*See, e.g.*, Ex. H, Jed Horowitz, *Arbitration War Launched by Ex-CS Brokers for Deferred Pay*, ADVISOR HUB (Feb. 8, 2016); Ex. I, Liz Moyer, *Finra's Help Sought in Fight Between Credit Suisse and Brokers*, N.Y. TIMES (Mar. 10, 2016); Ex. J, Jed Horowitz, *Brokers Sue Finra, Credit Suisse, Over Arbitration Shopping*, ADVISOR HUB (June 2, 2016).)

The specific arbitration between the YES Team and Credit Suisse became public by July 27, 2017, when the YES Team filed an action against Credit Suisse in New York Supreme Court to obtain documents in aid of the arbitration.  (¶ 20; Ex. G, Napoli Pet.)  The New York Supreme Court maintains a public website that is searchable by party name (among other possible criteria) and which is free to use. (*See* Ex. K, NY Supreme Court Search Page (last accessed April 21, 2022).)  Entering any of the Individual Defendants' names into this search engine yields the complete docket of the YES Team's supplemental discovery proceeding, including all of the filings referenced above (and which are referred to in the Amended Complaint).  (Ex. L, NY Supreme Court Search Results for Individual Defendants (last accessed April 21, 2022).)  The filings submitted to the New York court's public docket identified the parties—the Individual Defendants and Credit Suisse—as well as the nature of the pending arbitration claims.  (¶ 23;

---

*Arista Records L.L.C. v. Lime Group L.L.C.*, 532 F. Supp. 2d 556, 571 n.20 (S.D.N.Y. 2007) (relying on information on party's website on motion to dismiss).

Ex. G, Napoli Pet.; Ex. M, Kramarsky Affirm.)  Specifically, the YES Team's petition disclosed the date of the initial filing of the FINRA arbitration and its allegations of constructive discharge, breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, conversion, unpaid wages and unjust enrichment.  (¶ 23; Ex. G, Napoli Pet. ¶ 4.)  The same filing revealed that Credit Suisse had filed counterclaims against the YES Team, including a claim for misappropriation of confidential information.  ((¶ 24; Ex. G, Napoli Pet. at ¶ 5.)  The details of those counterclaims were further elaborated on in Credit Suisse's own public submission regarding this dispute on August 22, 2017.  (¶ 24; Ex. M, Kramarsky Affirm. at ¶¶ 16-17.)

    **C.    In Fall 2017, Plaintiff opens his YES account and begins paying YES fees.**

Plaintiff applied to open a YES account on or about August 29, 2017.  (Ex. N, Account Statements at 1.)  Like all YES customers, Plaintiff was required to provide key information regarding his investment profile—including (among other things) his net worth, investment experience, risk tolerance, and investment and risk-return objectives—through a Client Qualification Form and Agreement for Options (the "Options Agreement") that all prospective customers were required to sign and submit in order to be eligible to invest in YES.  (Ex. O, Options Agreement at 2.)

Plaintiff signed and submitted his Options Agreement to open his YES account on August 29, 2017.  Plaintiff reported having a net worth (exclusive of primary residence) of $████, including $████ in liquid assets.  (*Id.*)  When asked about his investment experience, Plaintiff self-identified as an "experienced investor in financial markets and financial investments" with 19 years of prior experience in equities, debt, and options.  (*Id.*)

The Options Agreement is just one part of a series of written agreements and materials that UBS provided to Plaintiff and all other YES investors at the point of sale.  (¶¶ 38-40.)  To open a YES account, UBS also required Plaintiff to execute (1) a PMP Yield Enhancement Strategy

Amendment to Advisory Relationship Agreement and Form ADV Disclosure Brochure ("ADV Amendment") (¶ 38; Ex. C), and (2) a Yield Enhancement Strategy Margin/Collateral Amendment ("Margin Agreement") (¶ 39; Ex. P).  UBS also provided Plaintiff and all prospective YES customers with plain English marketing materials regarding YES (the "YES Marketing Presentation"), as well as supplemental ADV brochures related to each member of the YES Team (the "ADV Brochure Supplements").  (¶¶ 28-31; Ex. B, YES Marketing Presentation; Ex. Q, ADV Brochure Supplements.)

The ADV Amendment signed by Plaintiff (and the other members of the purported class) set out the Mandate amount and annual management fee rate that UBS would charge Plaintiff to manage his YES account.  (Ex. C, ADV Amendment at 1.)  The ADV Amendment explained that the "Mandate" is the amount of collateral pledged to support the YES trading and, thus the amount of money potentially "at risk" in connection with that trading.  (*Id.* at 3.)  The ADV Amendment also disclosed that the "Program Fee imposed for the YES Strategy is in addition to any commissions, fees, or advisory fees [customers] are charged on the accounts [they] use as collateral."  (*Id.* at 4.)

In the ADV Amendment for his YES account, Plaintiff agreed to pay annual fees of 1.75% on a Mandate of $3.5 million.  (*Id.* at 1; *see also* Ex. P, Margin Agreement at 2 (acknowledging Plaintiff was "willing and able to bear the underlying fees [he] will incur in connection with this strategy").)  In accordance with his Form ADV, Plaintiff's annual fees for his YES account were charged quarterly, with the first installment being assessed in October 2017.  (Ex. N, Account Statements at 18.)

UBS also provided Plaintiff and the alleged class members with information relating to the individual members of the YES Team.   In its YES marketing materials, UBS detailed the

educational and professional background of all of the Individual Defendants on the YES Team, including that each had spent over a decade working on similar options-based strategies at Credit Suisse.  (Ex. B, YES Marketing Presentation at 16-17.)  In addition to these materials, UBS also provided ADV Brochure Supplements for each of the Individual Defendants to Plaintiff in connection with his formal enrollment in YES.  (Ex. Q, ADV Brochure Supplements.)  These supplemental brochures again noted the Individual Defendants' former employment at Credit Suisse, and disclosed that none of the Individual Defendants had "**any reportable legal or disciplinary events under the requirements applicable to investment advisers**." (*Id.* at 3.) Notably, the ADV Brochure Supplements expressly stated that the disclosures regarding the Individual Defendants "exclude[d] matters that are not required to be reported by investment advisers, *such as pending complaints and arbitrations*."  (*Id*. (emphasis added).)  The same materials notified Plaintiff of other "resource[s]" that he (or any YES customer) could consult for information related to potential legal and disciplinary events involving the YES Team, including the SEC and FINRA websites.  (*Id*.)

> D.      **Plaintiff files the instant action in December 2021.**

Despite having enrolled in YES in August 2017 and having begun to pay YES fees in October 2017, Plaintiff did not file the instant class action until December 5, 2021.  (ECF No. 1, Compl.)  Plaintiff's original Complaint purported to assert putative class action claims under New York common law for breach of fiduciary duty, aiding and abetting, negligent misrepresentation and unjust enrichment.  (*Id.*)  The allegations underlying each of these claims were the same.  In particular, the Complaint alleged that Defendants had made misrepresentations and / or omissions regarding (1) the purported "high risks" of the YES strategy, (2) a so-called "conflict of interest" due to the way that certain margin fees were charged when YES customers experienced losses from options trading, and (3) the unresolved employment arbitration between the YES Team and

Credit Suisse.  (*Id.* at ¶¶ 4, 11.)  As a result of these alleged misrepresentations or omissions, Plaintiff sought to recover various forms of "damages," including the trading losses he suffered in YES, as well as all fees and charges paid in connection with YES.  (*Id.* at ¶¶ 74, 76-78.)

### E.      The Amended Complaint

With the Court's permission, Defendants moved to dismiss the Complaint on February 22, 2022, asserting that this Court lacked jurisdiction under SLUSA, Plaintiff's claims were time-barred, and Plaintiff had failed to state a claim for relief.  (ECF Nos. 43, 44.)  Rather than oppose Defendants' motion, Plaintiff chose to amend his Complaint on March 15, 2022.

The Amended Complaint asserts a subset of the same non-fraud, common law claims found in the original Complaint, namely breach of fiduciary duty, aiding and abetting, and unjust enrichment.  The Amended Complaint jettisons all alleged misrepresentations and most purported omissions, in favor of only two supposed omissions.  First, that Defendants allegedly failed to disclose that the YES Team had been "constructively discharged" by Credit Suisse prior to moving to UBS.   And second, that Credit Suisse had accused the YES Team of misappropriating confidential information in a FINRA arbitration counterclaim.  (¶ 10.)  The Amended Complaint abandons Plaintiff's request for damages arising from his trading losses and margin fees, but continues to seek the recovery of the so-called "flat fees" UBS charged based on Plaintiff's YES account Mandate.  (¶¶ 63-65.)

## ARGUMENT

## I.      THE AMENDED COMPLAINT REMAINS BARRED BY SLUSA.

Defendant's prior motion demonstrated that the original Complaint was barred by SLUSA. Plaintiff did not even attempt to contest that motion, choosing, instead, to try and salvage his claims by amending them.  But the Amended Complaint merely slims down and repackages the same

fatally flawed claims from the original Complaint—claims that Plaintiff could not defend the first time around.  Plaintiff fares no better now.

A.    **There is no dispute regarding four of SLUSA's five elements.**

SLUSA applies whenever five elements are present.  One, a "covered class action."  Two, an action based on state statutory or common law.  Three, allegations that defendants made "a misrepresentation or omission of a material fact" or "used or employed an manipulative or deceptive device."  Four, assertions that such allegations or devices were made "in connection with the purchase or sale" of a security.  And five, "a covered security."  15 U.S.C. § 78bb(f)(1); *Zweiman v. AXA Equitable Life Ins. Co.*, 146 F. Supp. 3d 536, 545 (S.D.N.Y. 2015).  Elements one, two, three and five do not appear to be in dispute here, but are easily satisfied in any event.

As to element number one, Plaintiff admits this is a "covered class action," which SLUSA defines as an action in which "damages are sought on behalf of more than 50 persons" and the questions of law or fact common to the prospective class members "predominate" over any individual issues.  15 U.S.C. § 78bb(f)(5)(B)(i)(I).  The Amended Complaint claims more than 1,500 prospective class members and asserts "[c]ommon questions of law and fact exist as to all Class members, and predominate over any questions solely affecting individual[s]."  (¶¶ 43, 44.)

As to element number two, the Amended Complaint asserts only state common law claims, namely breach of fiduciary duty, aiding and abetting the same, and unjust enrichment.  Such theories of recovery are well within SLUSA's reach.  *See In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 573-74 (S.D.N.Y. 2012) (SLUSA bars fiduciary duty and aiding and abetting claims); *Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 417 (S.D.N.Y. 2003) (SLUSA bars unjust enrichment claims).

As to element number three, the claims in the Amended Complaint are explicitly predicated on an alleged series of omissions by Defendants that were material to the decision by Plaintiff and

all putative class members to invest in YES. (*See, e.g.*, ¶ 25 ("The concealed facts alleged herein were material to Plaintiff's and the Class's decision to choose a YES account, entrust their assets to the YES Team, and pledge a Mandate upon which they would pay a flat fee.").)

As to element number five, the Amended Complaint makes no attempt to dispute that YES involves "covered securities" within the meaning of SLUSA—nor could it credibly do so. SLUSA defines "covered securities" as those that are "listed on a national exchange." 15 U.S.C. § 78bb(f)(5)(E); 15 U.S.C. § 77r(b); *In re Herald*, 730 F.3d 112, 118-19 (2d Cir. 2013). YES is based on the "strategic sale and purchase of S&P 500 Index options." (Ex. C, ADV Amendment at 1.) Such options are listed on CBOE, a recognized national options exchange. (Ex. R, CBOE 10-Q at 30.) Given that the Second Circuit has already held that S&P 100 Index options are "covered securities," there is no credible argument that S&P 500 Index options are somehow beyond SLUSA's reach. *See Kingate*, 784 F.3d at 134 (applying SLUSA to a strategy involving the purchase and sale of S&P 100 Index options).

## B.     Plaintiff's argument regarding the "in connection with" element fails.

Plaintiff's only real challenge to SLUSA—that the "in connection with" element is not satisfied because the alleged omissions relate only to the opening of his YES account, or the entrustment of assets with the YES Team, and not to the trading that went on in the account—fails as a matter of settled law. (¶¶ 3-4, 10-13, 25-26, 52-54, 63-65.) In a misguided effort to bolster this argument, the Amended Complaint jettisons all prior references to the option trading that went on in Plaintiff's YES account and the trading losses he allegedly suffered in that account. This does not, and cannot, save the Amended Complaint from dismissal under SLUSA.

For one thing, the application of SLUSA is based on the substance of the claims being asserted. It is not determined by labels, semantics, or the skillful inclusion or exclusion (as is the case here) of loaded terms of art. That is, a litigant may "not evade SLUSA by camouflaging

11

allegations that satisfy [its] standard in the guise of allegations that do not." *See Kingate*, 784 F.3d at 149. Or, as this Court explained in *Zweiman v. AXA Equitable Life Ins. Co.*, a "plaintiff cannot avoid the application of SLUSA by removing covered words from its complaint but leaving in the covered concepts." 146 F. Supp. 3d 536, 546 (S.D.N.Y. 2015). So while Plaintiff may have diligently searched for and removed from his Amended Complaint the "covered words" (e.g., "trading," "buying," "selling," "options," etc.), he has failed to shed the SLUSA "covered concept" that still underlies and plagues his case.

According to the Amended Complaint, the gravamen of Plaintiff's claim is that he suffered equitable harm by relying on Defendants' omissions only in connection with the opening of his YES account. (¶¶ 3-4, 10-13, 25-26, 52-54, 63-65.) Plaintiff's myopic interpretation of the "in connection with" requirement flies in the face of settled law. As a threshold matter, SLUSA's "in connection with" requirement is to be broadly construed because "[a] narrow reading of the statute would . . . run contrary to SLUSA's stated purpose." *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 86 (2006).

More specifically, when applying the "in connection with" requirement in cases involving a plaintiff's decision to investment in a fund or strategy like YES—including multiple decisions from both the Second Circuit and this Court—courts have uniformly held that the "in connection with" requirement depends on the customer's *expectation* of what would happen in the investment fund or strategy in question. Put differently, the "in connection with" requirement is satisfied, and SLUSA applies, where the customer "expected," "intended," or was aware that the "objective" of an investment account was to trade covered securities. *See Kingate*, 784 F.3d at 138 (holding SLUSA was satisfied where plaintiffs "expect[ed]" the funds at issue to trade in covered securities); *see also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 430 (S.D.N.Y. 2010)

(applying SLUSA where "the objective of the fund was to manage Plaintiffs' investment using a strategy that inevitably included the purchase and sale of covered securities"); *Newman v. Fam. Mgmt. Corp.*, 748 F. Supp. 2d 299, 313 (S.D.N.Y. 2010), *aff'd*, 530 F. App'x 21 (2d Cir. 2013) ("Although the shares of the FM Fund are not covered securities, the objective of the Fund . . . involved the purchase and sale of covered securities."); *Marchak v. JP Morgan Chase & Co.*, 84 F. Supp. 3d 197, 219 (E.D.N.Y. 2015) (holding that the "in connection with" standard was met because "Plaintiffs themselves sought to take an interest in covered securities through individual investment accounts managed by Barry"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 342 (S.D.N.Y. 2016) (finding that the Second Circuit has "squarely held" that "the fact that Plaintiffs were 'seeking, directly or indirectly, to purchase covered securities' alone "satisfies the 'in connection with' requirement").  Once that is established, SLUSA applies regardless of whether securities were in fact traded in the account or fund.  *See Herald*, 730 F.3d at 118-119 ("[S]ince 'Madoff's purported trading strategy utilized indisputably covered securities, . . . the fact that Madoff Securities may not have actually executed their pretended securities trades does not take this case outside the ambit of SLUSA.").

Here, the Amended Complaint and the extrinsic material it references show that, by opening his YES account, Plaintiff expected, intended, and authorized the YES Team to trade S&P 500 Index options in that account on his behalf.  Plaintiff has conceded as much.  (ECF No. 41, Hr'g Tr. 19:20-20:24 ("THE COURT: . . . [Y]ou have just told me that [Plaintiff] understood that they were engaged in a strategy, meaning that they were going to be buying options.").)  Indeed, the fundamental premise of a YES account—to buy and sell options on the S&P 500 Index to enhance return on the collateral pledged to support that account—was repeatedly explained to and acknowledged by Plaintiff in the account opening agreements he signed and the written disclosures

he received.  (Ex. C, ADV Amendment at 1 (describing YES as an "actively managed investment strategy" that seeks to generate additional return for customers through the "strategic sale and purchase of S&P 500 Index options"); *see also* Ex. B, YES Marketing Presentation at 3-5.)

## II.   PLAINTIFF'S AMENDED CLAIMS ARE STILL TIME-BARRED.

The claims remaining in the Amended Complaint—non-fraud claims for breach of fiduciary duty, aiding and abetting, and unjust enrichment (¶¶ 49-65)—are subject to and barred by New York's three year statute of limitations.  *See* N.Y. C.P.L.R. § 214(4).

Under New York law, non-fraud claims for breach of fiduciary duty, aiding and abetting, and unjust enrichment are subject to either a three- or six-year limitations period.  *Compare* N.Y. C.P.L.R. § 214(4) (three-year limitations), *with* N.Y. C.P.L.R. § 213(1) (six-year limitations period).  The applicable limitations period depends on the nature of the relief being sought.  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139-40 (N.Y. 2009).  If the relief sought is primarily monetary in nature, then the three-year limitations period applies.  *Id.* at 139.

The only relief the Amended Complaint seeks is the "flat fees" Plaintiff paid to UBS to manage his YES account.  Such relief is plainly monetary in nature.  *See Access Point Med., LLC v. Mandell*, 963 N.Y.S.2d 44, 47 (N.Y. App. Div. 2013) ("[P]laintiffs' demand for the return of attorneys' fees they paid to defendants is, essentially, a claim for monetary damages.").  Plaintiff himself previously referred to such fees as part of the various forms of monetary "damages" he demanded in his original Complaint.  (ECF No. 1, Compl. at ¶¶ 46-47, 51, 72, 74, 76.)

In an attempt to stave off dismissal, Plaintiff has now meticulously scrubbed his Amended Complaint of all references to the word "damages," replacing such references with a bevy of equitable-sounding euphemisms (i.e., "disgorgement," "restitution," and "constructive trust" to disburse UBS's "ill-gotten gains").  (¶¶ 13, 42, 57, 61, 63.)  Yet New York courts routinely reject the "calculated use" of these very same "semantic distinctions"—down to the same

"disgorgement," "restitution," and "constructive trust" labels used in the Amended Complaint—"to distort the nature of the claim so as to expand the applicable limitations period." *See Access Point*, 963 N.Y.S.2d at 47 ("The calculated use of the term 'disgorgement' instead of other equally applicable terms such as repayment, recoupment, refund or reimbursement, should not be permitted to distort the nature of the claim so as to expand the applicable limitations period from three years to six. We cannot allow a purely semantic distinction to control the application of the statute of limitations."); *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 479-80 (S.D.N.Y. 2006) (applying the three-year limitations period because plaintiffs could not "overcome the fundamentally monetary nature of the recovery they seek by recasting [an unjust enrichment claim] as a bid for restitution and a constructive trust"); *IDT*, 12 N.Y.3d at 139-40 (applying the three-year limitations period despite demand for "disgorgement"; "[L]ooking to the reality, rather than the form, of this action, we conclude that IDT seeks a monetary remedy."). The same logic—and result—should apply here.

Given that the three-year limitations period applies, the only remaining question is whether Plaintiff's claims accrued before December 5, 2018, which is three years prior to the initial filing of this action on December 5, 2021. They all did. Plaintiff's fiduciary duty and aiding and abetting claims both accrued on the date he "first suffered [the] loss" that he seeks to recover. *See IDT*, 12 N.Y.3d at 140; *see also Hudson v. Delta Kew Holding Corp.*, 992 N.Y.S.2d 158, 2014 WL 1924324, *4 (N.Y. Sup. Ct. 2014) (aiding and abetting claims subject to the same time limitations as underlying tort). As noted above, Plaintiff's damages in this case are the management fees associated with his YES account. (¶ 4.) Plaintiff first paid such fees in October 2017, meaning

that the applicable three-year statute of limitations here expired by October 2020.[5]   (Ex. N, Account Statements at 13.)   Plaintiff's unjust enrichment claim accrued even earlier—upon the occurrence of the wrongful act giving rise to the claim.   *Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134-35 (N.Y. App. Div. 2007).   The wrongful acts here are Defendants' purported omissions that allegedly induced Plaintiff to open a YES account.   Even crediting those allegations, those omissions could not have occurred any later than August 29, 2017, which is when Plaintiff enrolled in YES.   (Ex. C, ADV Amendment at 5; Ex. P, Margin Agreement at 2.)   Thus, the three-year limitations period for the unjust enrichment claim expired no later than August 29, 2020.[6]   All of Plaintiff's claims must be dismissed as time-barred.

---

[5]   As stated, the Court may consider documents that are incorporated by reference or otherwise integral to the complaint when evaluating a 12(b)(6) motion.   *Williams*, 122 F. Supp. 3d at 161.

Here, Plaintiff's account statements, which reflect the fees Plaintiff paid, are clearly integral to his claims, which seek recovery of the same payments.   (*See* ¶¶ 62-65.)   The Court can, and should, rely on these statements now.   *See Schnall*, 225 F.3d at 266 (consulting plaintiff's credit card agreement and monthly statements); *Beaumont*, 2002 WL 483431, at *1 (finding plaintiff's monthly bank statements were integral to his claims and therefore could be considered on a motion to dismiss).

Consideration of such extrinsic documents is particularly appropriate when determining the accrual date for statute of limitations purposes.   *See In re Briscoe*, 448 F.3d 201, 220 (3d Cir. 2006) (consulting documents relating to the "accrual date for the plaintiff's claim" because "[s]uch a limited look outside the pleadings does not risk crossing the line between a proper threshold jurisdictional inquiry and an improper decision on the merits"); *Rodriguez v. SLM Corp.*, No. 07-cv-1866-WWE, 2009 WL 598252, at *4 (D. Conn. Mar. 6, 2009) (taking judicial notice of a disclosure statement for statute of limitations purposes where the "dates [therein] are integral to the complaint").

[6]   The unjust enrichment claim also fails because it is duplicative of Plaintiff's fiduciary duty and aiding and abetting claims.   *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").

### III.   THE AMENDED COMPLAINT FAILS TO ALLEGE AN ACTIONABLE OMISSION.

The Amended Complaint must be dismissed for the additional reason that it fails to state a claim upon which relief may be granted.  Plaintiff's remaining claims are all premised on his allegations that UBS and the YES Team concealed two material facts prior to his opening of his YES account: (1) that the YES Team had been "constructively discharged" by their former employer, Credit Suisse, and (2) that Credit Suisse had filed an arbitration counterclaim alleging that the YES Team had misappropriated certain confidential information.  (¶ 10.)  Plaintiff claims that he would not have opened a YES account had these facts been disclosed to him.  (¶¶ 11, 25-26, 35.)

Neither of these purported omissions is actionable.   Both omissions relate to an employment dispute over deferred compensation between the YES Team and Credit Suisse; neither relates in any material way to the trading or operation of YES many years later at UBS. Even if they did, UBS and the YES Team are not obligated to disclose the existence of mere unproven and conclusory allegations.  *Barron Partners, LP v. LAB123 Inc.*, 593 F. Supp. 2d 667, 672 (S.D.N.Y. 2009) (holding a consent decree was "not a 'true adjudication of the underlying issues'" and consequently had "no bearing on [a fiduciary's] character for truthfulness" and could not be a "material omission"); *see also Harrison v. Rubenstein*, No. 02 Civ. 9356 (DAB), 2007 WL 582955, *13 (S.D.N.Y. Feb. 22, 2017) (noting defendant had no duty to disclose "conclusory allegations" against itself).   Nor is such disclosure required by the SEC rules upon which the Amended Complaint relies.  (*Compare* ¶ 29 (referencing alleged disclosure obligations under SEC Release No. IA-3060) *with* SEC Release No. IA-3060 at 25 (explaining that the SEC "determined not to require disclosure of arbitration awards" because "arbitration claims are easy to make," and even final awards "may not necessarily include findings of wrongdoing").)  Likely for this reason,

17

many of the public sources for information on investment advisors make clear that they do not provide information on arbitration demands or complaints or from civil litigation matters that are unrelated to particular investments.   (*See e.g.*, Ex. S, FINRA BrokerCheck website at 2 ("BrokerCheck does not have information regarding civil litigation not involving investments . . . . [c]onsider doing an internet search to check for that type of information."); Ex. T, FINRA Arbitration Awards Online website ("FINRA's Arbitration Awards database enables users to perform Web-based searches for FINRA and historical NASD arbitration awards . . . . FINRA awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions."); Ex. Q, ADV Brochure Supplements at 9, 19, 29, 39 (noting that the disciplinary disclosures "exclude[] matters that are not required to be reported by investment advisers, *such as pending complaints and arbitrations*") (emphasis added).

In any event, the Amended Complaint reveals that the subject omissions were all publicly available before Plaintiff enrolled in YES on August 29, 2017.   (¶¶ 10 (citing public court documents referencing the arbitration between the YES Team and Credit Suisse dated July 24, 2017 and August 29, 2017).)   Plaintiff tries to characterize these materials as somehow "buried" despite their availability on a public docket, and alleges that the New York Supreme Court proceeding could not be discovered via an internet search.   (¶ 36.)   But the New York Supreme Court's website allows for simple, free searches by a party's name, and entry of any of the Individual Defendants names into this website reveals all of the records referencing the Credit Suisse arbitration that Plaintiff relies on in the Amended Complaint.   (Ex. K, NY Supreme Court Search Page; Ex. L, NY Supreme Court Search Results for Individual Defendants.)   The Amended Complaint does not allege that Plaintiff ever undertook such a search, or, indeed, that Plaintiff

made any efforts prior to opening his YES account to investigate the litigation history of the YES Team that he now claims was so consequential.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice the Amended Complaint and all claims asserted against them therein.

Dated:        April 21, 2022
              New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Kuangyan Huang* _____

Joseph Serino, Jr.
Kuangyan Huang
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York  10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: joseph.serino@lw.com
           kuan.huang@lw.com

*Attorneys for Defendants*