UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
+-------------------------------------------------+
| USDC SDNY                                       |
| DOCUMENT                                        |
| ELECTRONICALLY FILED                            |
| DOC #: _____                          |
| DATE FILED:  3/29/2024                          |
+-------------------------------------------------+
```

-------------------------------------------------------------------X
                               :

CHRISTIAN DUMONTET, *individually and on*
*behalf of all those similarly situated,*         :

                               :

                          Plaintiff,  :              1:21-cv-10361-GHW

                               :

                -against-         :     MEMORANDUM OPINION &
                               :             ORDER

UBS FINANCIAL SERVICES, INC.;         :
MATTHEW S. BUCHSBAUM; SCOTT M.  :
ROSENBERG; GERARD COSTELLO; and  :
SONIA M. ATTKISS,               :

                               :

                    Defendants.  :

                               :
-------------------------------------------------------------------X

GREGORY H. WOODS, *United States District Judge:*

        Plaintiff is a client of UBS Financial Services, Inc. ("UBS") who agreed to participate in a new, innovative investment strategy called the Yield Enhancement Strategy ("YES") program with UBS and its YES team. Plaintiff now brings a putative class action against UBS and its YES team to recover the fees assessed on his and others' YES accounts, based on Defendants' alleged failure to disclose an arbitration proceeding between the YES team and their former employer. Because Plaintiff's putative class action asserts state law claims based on alleged fraudulent conduct in connection with Plaintiff's acquisition of covered securities, this action is a federal securities fraud case in disguise, and Plaintiff's action is precluded by the Securities Litigation Uniform Standards Act ("SLUSA"). Accordingly, Defendants' motion to dismiss the complaint is GRANTED in full.

## I.      BACKGROUND

### A.      Factual Allegations[1]

Plaintiff Christian Dumontet is a client of Defendant UBS.  Dkt. No. 47 ¶ 1 (the "Amended

Complaint" or "AC").  In November of 2015, UBS hired a team from Credit Suisse (which included

Matthew S. Buchsbaum, Scott M. Rosenberg, Gerard Costello, and Sonia M. Attkiss—together, the

"Individual Defendants").  Id. ¶¶ 20, 22.  With the new team, UBS initiated a YES program—similar

to one the Individual Defendants had managed at Credit Suisse—as part of an effort to shift from

focusing on investment banking to wealth management, providing brokerage and financial advisory

services to individual clients.  Id. ¶¶ 5, 22; see also id. ¶¶ 17–18 (description of Individual Defendants).

The YES program "is an actively managed investment strategy that seeks to generate income

through the strategic sale and purchase of S&P 500 Index options."[2]  Dkt. No. 45-6[3] at ECF p. 2

(the "ADV Amendment"); see AC ¶¶ 7, 39 (quoting the ADV Amendment).  Specifically, a YES

account is used to engage in high frequency trading of short-term S&P 500 index options to

generate an additional source of income for the portfolios of UBS clients.  ADV Amendment at 1–

2.  UBS warns in its disclosures to clients participating in the YES program that this strategy carries

significant risk:

> This Strategy is aggressive and carries a high degree of risk.  You should not
> authorize the use of sophisticated option strategies unless you are prepared to sustain
> large losses.  You should not enter into option transactions unless you are prepared

---

[1] Unless otherwise noted, the following facts are drawn from the Amended Complaint, Dkt. No 47, and the documents incorporated by reference in the Amended Complaint, and they are accepted as true for the purposes of evaluating Defendants' motions to dismiss.  See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In ruling upon a Rule 12(b)(1) motion alleging lack of subject matter jurisdiction, the Court must accept as true all well-pleaded assertions of fact in the complaint and resolve doubts and draw all reasonable inferences in favor of the plaintiff.  This factual presumption, however, does not attach to jurisdictional allegations."  Arbitron, Inc. v. 3 Cities, Inc., 438 F. Supp. 2d 216, 217 (S.D.N.Y. 2006).

[2] An option is a financial derivative product that gives the purchaser the right to buy or sell an underlying product— here, the S&P 500 index—at (or sometimes up to) a certain time in the future.  The S&P 500 index is a weighted index of the stock prices of 500 publicly traded companies in the United States.

[3] While the Amended Complaint cites to this docket item, the same document is also available at Dkt. No. 52-3 and, in redacted form, Dkt. No. 60-3.

to lose the principal invested as well as the total amount of premiums paid or received.

ADV Amendment at 2; *see also* AC ¶ 38 (alleging the ADV Amendment was provided to each UBS client who chose to open a YES account).

The YES program requires participating clients to "designate a portion of their existing UBS investment portfolio as collateral for a margin account called the Mandate that could be used for the YES program." AC ¶ 6; *see also* ADV Amendment at 3. The portion of the investment portfolio designated as collateral for a YES account, or the "Mandate," is then "used to meet the margin requirements of the option positions held in the YES account." ADV Amendment at 3. While UBS typically charges its clients a fee based on the value of a client's investment portfolio, UBS's YES program charges a "flat fee" based on the size of the Mandate for the YES account. *Id.* ¶¶ 5–7, 19; ADV Amendment at 3.

UBS and the Individual Defendants recruited existing UBS clients, including Plaintiff, to enroll in the YES program. AC ¶ 8. Plaintiff opened his YES account on or about August 24, 2017. Dkt. No. 45-5[4] at ECF p. 5 (the "Options Agreement"). At opening, Plaintiff designated $3.5 million (out of $19 million available in the account designated as his collateral account) as the Mandate for his YES account. ADV Amendment at 1. At some point after opening his YES account, Plaintiff paid the fees charged on his YES account, which was calculated as a percentage of his Mandate. AC ¶ 16.

Meanwhile, on March 1, 2017, the Individual Defendants commenced a confidential FINRA arbitration proceeding against Credit Suisse for the recovery of alleged unvested contingent deferred awards from their time at Credit Suisse, alleging claims of breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, conversion, unpaid wages, and unjust

---

[4] While the Amended Complaint cites to this docket item, *see* AC ¶ 39, the same document is also available at Dkt. No. 52-15 and, in redacted form, at Dkt. No. 60-15.

enrichment. *Id.* ¶ 23.  On June 21, 2017, Credit Suisse filed counterclaims in the arbitration

proceeding, alleging in part that the Individual Defendants, in Plaintiff's words, had appropriated

"substantial amounts of valuable confidential information relating to Credit Suisse's business and

clients," including the YES program and certain client account information, for use at UBS. *Id.* ¶ 24.

By the time Plaintiff opened his YES account, Defendants had not disclosed to him or other

prospective YES program clients the existence of the FINRA arbitration proceeding and its

allegations, including the Individual Defendants' allegations of "constructive discharge" from Credit

Suisse and Credit Suisse's allegations of the misappropriation of confidential information from

Credit Suisse. *Id.* ¶ 26.  Plaintiff represents that Defendants were under a "continuing affirmative

obligation" to disclose these facts to Plaintiff and other YES clients and that Defendants failed to do

so up until the filing of this action. *Id.*; *see also id.* ¶¶ 25–40.  Plaintiff also alleges that Defendants'

omissions were "material to Plaintiff's . . . decision to choose a YES account, entrust [his] assets to

the [Individual Defendants], and pledge a Mandate upon which [he] would pay a flat fee," and that

Defendants' purported "failure to comply with their affirmative fiduciary obligations relating to

disclosure of material facts . . . caused Plaintiff . . . to choose YES accounts managed and operated

by the [Individual Defendants] and pay flat fees on the Mandate amounts . . . ." *Id.* ¶¶ 11, 25.

Plaintiff now seeks to recover the fees he paid on his YES account from Defendants.[5] *Id.* at 21–22

(prayer for relief).

---

[5] The Court only looks to the Amended Complaint for the factual allegations assumed as true for the purposes of this opinion.  However, "courts have utilized prior iterations of a plaintiff's complaint to serve as an interpretive tool" in examining the issue of SLUSA preclusion, especially where such a comparison might indicate that a plaintiff is trying to "avoid the application of SLUSA by removing overed words from [his] complaint but leaving in the covered concepts." *Zweiman v. AXA Equitable Life Ins. Co.*, 146 F. Supp. 3d 536, 546 (S.D.N.Y. 2015).  Such indications are present here, where Plaintiff's original complaint focused more directly on the purported concealment by Defendants of the high-risk nature of the YES program and its investment strategy and the alleged losses suffered in the YES accounts.  Dkt. No. 1 ¶¶ 1–2, 5–6.  Allegations that a plaintiff suffered losses due to misleading omissions about risks in his investments are reminiscent of allegations commonly found in securities fraud actions—and, notably, Plaintiff scrubbed his Amended Complaint clear of such details after receiving notice that Defendants would seek dismissal of the action under SLUSA. *See* Dkt. No. 35 (Defendants' pre-motion conference letter); Dkt. Nos. 43, 44 (first motion to dismiss and memorandum of law).

**B.      Procedural History**

Plaintiff filed this putative class action on December 5, 2021.  Dkt. No. 1.  Defendants

moved to dismiss.  Dkt. No. 43.  Plaintiff filed an amended complaint, asserting the following

claims under New York state law: (1) breach of fiduciary duty; (2) aiding and abetting breach of

fiduciary duty; and (3) unjust enrichment.  AC at 17–21.[6]  As remedies, Plaintiff seeks a

constructive trust, restitution, and disgorgement of the flat fees charged on the Mandate for

Plaintiff's YES account, as well as interest, fees, and costs.  *Id.* at 21–22.

The Court denied Defendants' first motion to dismiss as moot, given Plaintiff's amended

complaint.  Dkt. No. 53.  Defendants move again to dismiss Plaintiff's claims under Federal Rule of

Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. No. 50 (the "Motion to Dismiss"); Dkt. No. 51 ("MTD

Brief"); Dkt. No. 52 (declaration).[7]  Plaintiff opposes.  Dkt. No. 54 ("Opp. Brief"); *see also* Dkt. No.

55 (declaration).  Defendants filed a reply.  Dkt. No. 56.

On July 8, 2022, Plaintiff filed a letter notifying the Court of a June 29, 2022 cease-and-desist

order issued by the U.S. Securities and Exchange Commission ("SEC") against UBS, to which

Defendants filed a response.  Dkt. Nos. 62, 63; *see also* Dkt. No. 62-1 ("SEC Order").  In the SEC

Order, the SEC found that UBS had violated the Investment Advisers' Act of 1940 for failure to

fully disclose the risks of its YES program and for failures in trainings and oversight programs

---

[6] Defendants make much of Plaintiff's decision to amend his complaint rather than file a response to the first motion to dismiss.  *See, e.g.*, Dkt. No. 51 at ECF pp. 6, 14.  A plaintiff may amend his or her complaint once as a matter of course no later than 21 days after service of a Rule 12(b) motion, provided that other conditions not relevant here are met.  *See* Fed. R. Civ. P. 15(a)(1)(B).  Defendants do not argue Plaintiff's amendment was untimely or that it was other than filed as of right.  The Court declines to draw any inference regarding the merits of Plaintiff's claims from Plaintiff's decision to exercise his right to amend his complaint instead of opposing the first motion to dismiss.

[7] Defendants filed a sealed version of their brief and declaration in support of the Motion to Dismiss, Dkt. Nos. 51, 52, and a public, redacted version of both, Dkt. Nos. 59, 60.  The nonredacted versions of Defendants' filings contain details of Plaintiff's individual financial information, which the Court does not rely on in this opinion.  *See* Dkt. No. 61 (order granting Defendants' motion to seal).

related to the YES program.  SEC Order at 2, 7.  As a part of the SEC Order, UBS agreed to pay a total of $24.6 million in disgorgement, prejudgment interest, and civil penalties.  *Id.* at 7.[8]

## II.   LEGAL STANDARD

The Second Circuit has suggested that a motion to dismiss state law claims under SLUSA is a jurisdictional inquiry properly analyzed under Rule 12(b)(1).  *See In re Kingate Mgmt. Ltd. Litig.* ("*In re Kingate I*"), 784 F.3d 128, 135 n. 9 (2d Cir. 2015) ("[W]e question whether a motion to dismiss pursuant to SLUSA is best considered under Rule 12(b)(6), . . . or under Rule 12(b)(1) . . . .  A dismissal under SLUSA . . . does not adjudicate against any plaintiff the right to recover on the claim.").  Since the Second Circuit's comment in *In re Kingate I*, courts in this District (and the Second Circuit itself) have inconsistently applied Rule 12(b)(1) and Rule 12(b)(6) in analyzing motions to dismiss state law claims pursuant to SLUSA.  *Compare Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 370 n. 7 (S.D.N.Y. 2016) (citing *In re Kingate I*, 784 F.3d at 135 n. 9) ("Recently, the Second Circuit has suggested that an analysis of SLUSA's application is always driven by a jurisdictional inquiry . . . .  This Court analyzes the question as jurisdictional." (citations omitted)), *with Rayner v. E\*TRADE Fin. Corp.* ("*Rayner I*"), 248 F. Supp. 3d 497, 499–500 (S.D.N.Y. 2017), *aff'd*, 899 F.3d 117 (2d Cir. 2018) (applying, without analysis, Rule 12(b)(6) standard).

Following the guidance in *In re Kingate I*, the Court applies the Rule 12(b)(1) standard in reviewing whether Plaintiff's claims are precluded under SLUSA.  SLUSA precludes class actions based on state law claims, but it does not "bar[] a plaintiff from filing a . . . non-covered action asserting the same claims against the same defendants."  *See In re Kingate I*, 784 F.3d at 135 n. 9.  Resolution of a motion to dismiss under SLUSA does not require an analysis of whether Plaintiff

---

[8] Plaintiff acknowledges that the SEC Order "does not address the arguments in the pending motion to dismiss . . . ." Dkt. No. 62 at 1.  Indeed, the SEC Order focuses on UBS's purported failure to disclose the risk of YES accounts to investors and to adequately train its financial advisors—who do not appear to be any of the Individual Defendants named in this case—for the YES program.  SEC Order at 3–4.  It does not specifically refer to the alleged failure to disclose the arbitration proceedings that forms the heart of this action.  The Court therefore does not rely on the SEC Order in this opinion.

has failed to state a claim for relief.  Rule 12(b)(6), which applies to motions based on "failure to state a claim upon which relief can be granted," is ill-fitting.  Fed. R. Civ. P. 12(b)(6).  Therefore, the Court analyzes the question under Rule 12(b)(1).[9]

The Court applies the Rule 12(b)(6) standard to the remainder of its analysis in this opinion—namely, whether Plaintiff has otherwise stated a claim for relief in the Amended Complaint, including whether Plaintiff's claims are barred by the statute of limitations.

### A.      Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  To survive a Rule 12(b)(1) motion to dismiss, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

A "Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial, i.e., based solely on the allegations of the complaint and exhibits attached to it, or fact-based, i.e., based on evidence beyond the pleadings."  *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (quotations omitted).  "[W]hile a district court may refer to evidence outside the pleadings when resolving a 12(b)(1) motion, . . . [i]t is only where jurisdictional facts are placed in dispute that the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  *Id.* (citations and quotations omitted).  "When the extrinsic evidence submitted by the parties does not controvert the material allegations of the complaint, it is not error for the district

---

[9] Nonetheless, the Court's analysis on SLUSA preclusion in this matter would remain the same under the Rule 12(b)(6) standard.

court to base its ruling solely on the allegations of the complaint." *Id.*[10] Here, the relevant factual allegations for SLUSA preclusion are not in dispute, and the Court solely relies on the allegations contained in the Amended Complaint and the documents incorporated by reference into the Amended Complaint for the purposes of this opinion.[11]

### B.   Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In a motion to dismiss under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010). However, "[t]he tenet that a court must accept as true a complaint's factual allegations does not apply to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive dismissal under Rule 12(b)(6), a complaint must allege sufficient facts to state a plausible claim. *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). The plaintiff's claim must be more than "speculative." *Twombly*,

---

[10] Courts of this Circuit have also found it appropriate to look to evidence of SLUSA preclusion outside the complaint, especially in the context of evaluating whether removal was proper because the state law claims were precluded by SLUSA. *See Romano v. Kazacos*, 609 F.3d 512, 521 (2d Cir. 2010); *see also Zweiman*, 146 F. Supp. 3d at 545 ("When determining whether a complaint is covered by SLUSA, courts may apply the 'artful pleading rule' and 'look beyond the face of the . . . complaint[] to determine whether [it] allege[s] securities fraud in connection with the purchase or sale of covered securities.'" (alterations in original) (quotations omitted)).

[11] Here, the documents integral to the complaint include the ADV Amendment, Dkt. No. 45-6, and the Options Agreement, Dkt. No. 45-5. The Amended Complaint relies heavily on these documents, as it repeatedly quotes from both documents to establish the nature of Plaintiff's YES account (including how the flat fees were calculated), *see* AC ¶ 19, Defendants' alleged "affirmative and ongoing obligation of utmost good faith and full disclosure," *see id.* ¶¶ 35, 39, and what Defendants did and failed to disclose to Plaintiff, *see id.* ¶¶ 39, 55. The parties also do not dispute the authenticity or accuracy of the documents, nor their relevance. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (setting forth standard for consideration of documents extraneous to the complaint).

550 U.S. at 545.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco*, 622 F.3d at 111. A court may also consider documents that are "integral to" the complaint, meaning that the complaint relies heavily upon its terms and effects.  *Id.*  "[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *Id.* (internal quotation marks omitted) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).  "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document."  *Id.* (quoting *Faulkner*, 463 F.3d at 134).

III.   **DISCUSSION**

Plaintiff brings a putative class action under New York law, asserting claims for a breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment.  For the reasons

described below, Plaintiff's putative class action based on these claims is precluded by SLUSA. *See* 15 U.S.C. § 78bb(f)(1).[12]

In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to "establish[] uniform standards for class actions alleging securities fraud, including more stringent pleading requirements for certain securities fraud class actions brought in federal courts." *Romano v. Kazacos*, 609 F.3d 512, 517 (2d Cir. 2010). However, "plaintiffs began circumventing [the PSLRA's] restrictions by filing federal securities fraud class actions in state court, where they could assert many of the same causes of action while avoiding the PSLRA's requirements, which apply in federal court." *Id.* In an effort to curb these efforts, Congress enacted SLUSA in 1998. *Id.* at 518. Accordingly,

> SLUSA precludes private parties from filing in federal or state court (1) a covered class action (2) based on state law claims, (3) alleging that defendants made 'a misrepresentation or omission of a material fact' or 'used or employed any manipulative or deceptive device or contrivance' (4) 'in connection with' the purchase or sale of (5) covered securities.

*Rayner v. E\*TRADE Fin. Corp.* ("*Rayner II*"), 899 F.3d at 119–20 (quoting 15 U.S.C. § 78bb(f)(1)).[13]

The parties do not dispute that Plaintiff has failed a covered class action based on state law claims involving covered securities. The only dispute, in relation to SLUSA preclusion, is whether Plaintiff's claims allege a "misrepresentation or omission of a material fact in connection with" the purchase or sale of covered securities. *See* 15 U.S.C. § 78bb(f)(1). When examining whether a complaint alleges material misstatements or omissions in connection with the purchase or sale of

---

[12] Plaintiff asserts that Defendants are only seeking preclusion of his breach of fiduciary duty claim, and only to the extent that it is based on fraud. Opp. Brief at 5 n. 4. To the contrary, Defendants argue that all three claims are barred by SLUSA. *See* MTD Brief at 10 (listing the three state law claims, arguing that "[s]uch theories of recovery are well within SLUSA's reach," and citing cases for finding SLUSA preclusion of fiduciary duty, aiding and abetting, and unjust enrichment claims).

[13] SLUSA precludes covered class actions that assert state law claims, rather than precluding claims. *See* 15 U.S.C. § 78bb(f)(1) ("No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained . . . ."). Nonetheless, courts—including the Second Circuit—frequently refer to the preclusion of claims under SLUSA. *See, e.g., In re Kingate I*, 784 F.3d at 152 ("On remand, the district court may well conclude . . . that certain of Plaintiffs' claims are precluded by SLUSA and others are not."). The Court uses the same shorthand in this opinion.

covered securities, "[t]he district court [is] required to conduct this analysis on a claim-by-claim basis." *In re Kingate I*, 784 F.3d at 143. The Court therefore analyzes each of Plaintiff's claims individually below. Because the gravamen of Plaintiff's allegations underpinning his claims is that Defendants are responsible for misleading omissions that were material to Plaintiff's decision to open his YES account, Plaintiff's claims are precluded under SLUSA.

### A.       Breach of Fiduciary Duty Claim

Plaintiff's claim of breach of fiduciary duty falls within the scope of SLUSA preclusion because it is based on allegations of a "misrepresentation or omission of a material fact in connection with" the purchase or sale of covered securities. *See* 15 U.S.C. § 78bb(f)(1).

In evaluating whether a plaintiff has alleged conduct that falls within the scope of SLUSA preclusion, the Second Circuit has held that:

> SLUSA requires courts first to inquire whether an allegation is of conduct by the defendant, or by a third party. Only conduct by the defendant is sufficient to preclude an otherwise covered class action. Second, SLUSA requires courts to inquire whether the allegation is necessary to or extraneous to liability under the state law claims. If the allegation is extraneous to the complaint's theory of liability, it cannot be the basis for SLUSA preclusion.

*In re Kingate I*, 784 F.3d at 142–43.

The Second Circuit also emphasized that plaintiffs may not avoid SLUSA preclusion by artful pleading:

> plaintiffs do not evade SLUSA by camouflaging allegations that satisfy this standard in the guise of allegations that do not. When the success of a class action claim depends on a showing that the defendant committed false conduct[14] conforming to SLUSA's specifications, the claim will be subject to SLUSA, notwithstanding that the claim asserts liability on the part of the defendant under a state law theory that does not include false conduct *as an essential element*—such as breach of a contractual right to fair dealing.

---

[14] *In re Kingate I* uses the phrase "false conduct" or "fraudulent conduct" interchangeably to refer to the "misrepresentation or omission of a material fact" element of a class action that is precluded by SLUSA. *See* 15 U.S.C. § 78bb(f)(1). The Court therefore adopts the same terms for the purposes of this opinion.

*Id.* at 149 (emphasis in original); *see also Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005) ("Plaintiff also contends that as master of his own complaint, he is entitled to plead around SLUSA. But SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting.").

The allegations underpinning Plaintiff's breach of fiduciary duty claim are plainly grounded in the allegedly deceptive omission by Defendants of facts that were material to Plaintiff's decision to open his YES account. Plaintiff asserts that Defendants "breached their fiduciary duties to Plaintiff . . . by failing to comply with their affirmative and ongoing obligation to disclose the FINRA arbitration and counterclaim . . . ." AC ¶ 53. Throughout the Amended Complaint, Plaintiff asserts that, in soliciting Plaintiff to open a YES account with UBS, Defendants "failed to comply with their affirmative and ongoing obligations of full disclosure and utmost good faith by concealing two facts that were material to . . . UBS'[s] client[s'] engagement of [Defendants] as their advisers for the YES accounts." AC ¶ 10; *see also id.* ¶¶ 2, 11, 25–26. Plaintiff also alleges that Defendants "have an ongoing affirmative obligation to . . . inform [UBS's YES] clients of any 'material information that could affect the advisory relationship,'" but Defendants failed to disclose the FINRA arbitration with Credit Suisse to their clients until the filing of this action. *Id.* ¶¶ 30–32, 35. Plaintiff's complaint expressly alleges that Defendants' breach of fiduciary duty stems from certain misleading omissions, which were material to Plaintiff's acquisition of covered securities through his YES account. Such a claim is precisely what SLUSA precludes. *See In re Kingate I*, 784 F.3d at 149 ("[I]f the success of a claim depends on conduct specified in SLUSA, and the defendant was complicit in that conduct, the claim is covered by SLUSA even though plaintiffs have artfully avoided using SLUSA's terms.").

Plaintiff argues that his breach of fiduciary duty claim does not fall within the ambit of SLUSA because he "allege[s] a breach of an independent duty-based obligation." Opp. Brief at 10–

11; *see also* AC ¶ 56 ("Plaintiff's allegations do not rely on allegations of false conduct, nor is fraud an essential or integral part of Plaintiff's breach of fiduciary claim . . . ."). Plaintiff cites to *In re Kingate I* for the categorical argument that "claims of breach of a 'duty-based obligation' for unearned fees on invalid and voidable agreements are not precluded by SLUSA." Opp. Brief at 10 (citing *In re Kingate I*, 784 F.3d at 152). But the Second Circuit in *In re Kingate I* only excluded from SLUSA preclusion "duty-based obligation" claims that "would not require any showing of false conduct on the part of Defendants." *In re Kingate I*, 784 F.3d at 152 ("The asserted liability of Defendants under these claims arises from the fact that Defendants breached their contractual and duty-based obligations to Plaintiffs. Proof of these claims would not require any showing of false conduct on the part of Defendants. We therefore conclude that such allegations are not precluded by SLUSA."). Again, the substance of Plaintiff's claims, not their label, governs the analysis.[15] *See also Rayner II*, 899 F.3d at 120 ("[Plaintiff] describes his breach of duty claim as based on [defendant's] breach of a non-fraud based fiduciary duty. But 'plaintiffs should not be permitted to escape SLUSA by artfully characterizing a claim as dependent on a theory other than falsity when falsity nonetheless is essential to the claim . . . .'" (cleaned up) (citation omitted) (quoting *In re Kingate I*, 784 F.3d at 140)). Plaintiff's argument that "duty-based" claims may be pursued regardless of whether they require proof of fraudulent conduct, in connection with the acquisition of covered securities, is not well-founded.

Plaintiff also argues that Defendants' alleged omissions are not "in connection with" his purchase or sale of covered securities because they "relate to an employment dispute over deferred compensation between the [Individual Defendants] and Credit Suisse" and not "to the trading or

---

[15] Indeed, on remand, the district court followed the Second Circuit's guidance and held that claims not requiring fraudulent conduct—by the defendants—were outside the scope of SLUSA preclusion. *See, e.g.*, *In re Kingate Mgt. Ltd. Litig.* ("*In re Kingate II*"), No. 09-CV-5386 (DAB), 2016 WL 5339538, at *29 (S.D.N.Y. Sept. 21, 2016) ("Plaintiffs allege only that [defendant] was aware that the information was provided by [a third party] and failed to verify it. Because the breach of duty alleged does not require a finding of falsity, these claims are not precluded." (citation omitted)), *aff'd*, 746 F. App'x 40 (2d Cir. Aug. 17, 2018). On the other hand, claims requiring fraudulent conduct by the defendants were found to be precluded by SLUSA. *Id.* at *27–28.

operation of YES . . . at UBS." Opp. Brief at 13 (quoting MTD Brief at 17). This argument focuses on whether the purported omissions themselves were about the covered securities. But that is not what the "in connection with" element requires.

A "fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014). Plaintiff alleges that Defendants' omissions were "material to Plaintiff's . . . decision" to open his YES account and that the omissions "caused Plaintiff . . . to choose YES accounts managed and operated by" Defendants. AC ¶¶ 11, 25. Plaintiff's breach of fiduciary duty claim, therefore, is based on allegations of conduct "in connection with" Plaintiff's acquisition of covered securities. *See, e.g.*, *Rayner I*, 248 F. Supp. 3d at 504 (rejecting as "baseless" plaintiff's argument that the alleged fraudulent conduct "affected only the plaintiff's decision regarding which broker to use, but not which securities to trade").[16] Accordingly, Plaintiff's breach of fiduciary duty claim is precluded by SLUSA.

### B.     Aiding and Abetting Breach of Fiduciary Duty Claim

Plaintiff's claim of aiding and abetting breach of fiduciary duty is based on the same allegations as for Plaintiff's breach of fiduciary duty claim. *See* AC ¶¶ 58–61 (asserting aiding-and-abetting cause of action). In support of this claim, Plaintiff asserts that "[e]ach Defendant aided and

---

[16] Plaintiff's remaining arguments are also unpersuasive. Plaintiff argues that Defendants' cited cases analyze the meaning of "covered securities" rather than the "in connection with" element and that the cases are distinguishable because they are asserted against feeder funds connected to the infamous Ponzi scheme organized by Bernie Madoff. Opp. Brief at 11. Plaintiff's first argument is plainly wrong. *See, e.g.*, *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 341–42 (S.D.N.Y. 2016) (engaging in analysis of "in connection with" element); *Marchak v. JPMorgan Chase & Co.*, 84 F. Supp. 3d 197, 214–20 (E.D.N.Y. 2015) (same); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 312–13 (S.D.N.Y. 2010) (same), *aff'd on other grounds*, 530 F. App'x 21 (2d Cir. July 16, 2013) (summary order); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 430 (S.D.N.Y. 2010) (same); *Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 411–13 (S.D.N.Y. 2003) (same). Plaintiff's second argument also fails: While Plaintiff does not allege "fraud to recover trading losses" against Defendants, Opp. Brief at 11, neither that distinction nor the specific context of the Bernie Madoff fraud makes these cases inapplicable to the Court's analysis.

abetted each other Defendant in breaching their fiduciary duties to Plaintiff and the Class by knowingly inducing and participating in a substantial way in the breaches of fiduciary duty, as alleged herein." *Id.* ¶ 60. Defendants' alleged aiding and abetting stems from "inducing and participating in" the same misleading omissions material to Plaintiff's opening of his YES account already discussed. Accordingly, Plaintiff's aiding and abetting claim "is predicated on the same facts as the related breach of fiduciary duty claim" and is also precluded by SLUSA. *See In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 572 (S.D.N.Y. 2012) (holding aiding and abetting breach of fiduciary duty claim precluded by SLUSA); *see also Marchak*, 84 F. Supp. 3d at 220 (dismissing state law claims, including aiding and abetting breach of fiduciary duty, as barred by SLUSA).

### C. Unjust Enrichment Claim

Plaintiff's unjust enrichment claim is also precluded by SLUSA because the claim is premised on the same alleged breach of fiduciary duty just discussed. *See, e.g.*, AC ¶ 63 ("Defendants were enriched at the expense of Plaintiff . . . in that they received flat fees on the Mandate amounts in violation of their affirmative and ongoing fiduciary obligations of utmost good faith and full and fair disclosure . . . ."); *id.* ¶ 64 ("Defendants' receipt of flat fees on the Mandate amounts was a result of their breach of their affirmative and ongoing fiduciary obligations . . . ."); *id.* ¶ 65 ("Defendants have been and will be unjustly enriched if they are permitted to retain such flat fees as a result of their noncompliance with their obligations and the invalid opening of the YES accounts."). The alleged violation of fiduciary obligations, as already explained, is based on alleged misleading omissions by Defendants that were material to Plaintiff's opening of his YES account; therefore, for reasons already explained, Plaintiff's unjust enrichment claim is precluded by SLUSA. *See, e.g.*, *Hill* 207 F. Supp. 3d at 342 n. 9 (finding unjust enrichment claim barred by SLUSA); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d at 430–31 (same); *Winne*, 315 F. Supp. 2d at 417 (dismissing unjust enrichment claim as being "another way of alleging misrepresentation or fraud" and barred by SLUSA).

Alternatively, Plaintiff's unjust enrichment claim is dismissed because it is duplicative of Plaintiff's breach of fiduciary duty claim. "The basic elements of an unjust enrichment claim in New York [are] that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186 (2d Cir. 2023). "[U]njust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* As a result,

> [a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim. And an unjust enrichment claim will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.

*Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021) (quotations omitted). Here, Plaintiff asserts no additional or different allegation to support his unjust enrichment claim and simply relies on Defendants' purported breach of their fiduciary duties to also assert the unjust enrichment claim.[17]

Accordingly, Plaintiff's unjust enrichment claim is dismissed as duplicative of Plaintiff's breach of fiduciary duty claim. *See, e.g., Campbell*, 516 F. Supp. 3d at 394 ("[T]he unjust enrichment claim is a mere repackaging of her other claims . . . ."); *Corsello*, 18 N.Y.3d at 791 ("To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.").

---

[17] Plaintiff argues that his unjust enrichment claim is not duplicative of his other claims because "Plaintiff's unjust enrichment claim alleges that 'the opening of the YES accounts' was 'invalid and void.'" Opp. Brief at 19. But this allegation is not unique to Plaintiff's unjust enrichment claim; not only is it alleged in support of all three claims, Plaintiff also alleges that his YES account opening was "invalid and void" *because* of the purported breach of fiduciary obligations—which forms the basis of all of Plaintiff's claims. *See* AC ¶¶ 26, 53, 64.

### D.    Statute of Limitations[18]

The Court cannot conclude, at this stage of the proceedings, that Plaintiff's claims are time barred.  Defendants argue that Plaintiff's claims are barred by the statute of limitations, which Plaintiff disputes.  Plaintiff also argues that Defendants should be equitably estopped from asserting this defense.  The Court finds that it is premature to resolve these arguments.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n. 12 (2d Cir. 2014)).  Here, the facts supporting the statute of limitations defense are not apparent on the face of the complaint.

The parties dispute whether a six- or three-year statute of limitations governs Plaintiff's claims.  The crux of this issue is whether the remedies Plaintiff seeks are monetary or equitable in nature:[19]

> New York law does not provide a single statute of limitations for breach of fiduciary duty claims.  Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks.  Where the remedy sought is purely monetary in nature, courts construe the suit as alleging "injury to property" within the meaning of [New York's Civil Practice Law and Rules ("CPLR")] 214(4), which has a three-year limitations period.  Where, however, the relief sought is equitable in nature, the six-year limitations period of CPLR 213(1) applies.

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) (citations omitted); *accord Monaghan v. Ford Motor Co.*, 897 N.Y.S.2d 482, 482 (2d Dep't 2010).[20]

---

[18] While the Court dismisses Plaintiff's claims on other grounds, the Court discusses the parties' statute of limitations arguments here to show that an amendment of the complaint would not be futile.  Accordingly, the Court only addresses Plaintiff's breach of fiduciary duty claim and aiding and abetting claim, which are only dismissed under SLUSA and may be re-pleaded, but not Plaintiff's unjust enrichment claim, which is dismissed on additional grounds.

[19] To the extent that there are other statutes of limitations under New York law that might govern Plaintiff's claims, the parties do not raise them in their briefing, and the Court does not consider them here.

[20] The Court is aware that, on occasion, courts have stated that the statute of limitations for a breach of fiduciary duty claim is six years.  *See, e.g.*, *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) ("The statute of limitations in New York for claims of unjust enrichment, breach of fiduciary duty, corporate waste, and for an accounting is generally six years.").  These cases are neither binding nor persuasive because:  they rely on the six-year statute of limitations under a separate statutory provision, CPLR 213(7), which governs derivative suits on behalf of corporations; the governing

In assessing the relief sought for the purposes of determining the statute of limitations, New York law looks to the substantive nature of the relief, not its label. *See, e.g.*, *IDT Corp.*, 12 N.Y.3d at 139–40 ("Thus, looking to the reality, rather than the form, of this action, we conclude that [plaintiff] seeks a monetary remedy." (citation omitted)); *Access Point Med., LLC v. Mandell*, 963 N.Y.S.2d 44, 47 (1st Dept. 2013) ("The calculated use of the term 'disgorgement' instead of . . . repayment, recoupment, refund, or reimbursement, should not be permitted to distort the nature of the claim . . . . We cannot allow a purely semantic distinction to control the application of the statute of limitations."); *see also Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 479 (S.D.N.Y. 2016) ("[A]lthough restitution and formation of a constructive trust are indeed classed as equitable remedies, in ascertaining the governing statute of limitations, courts look beyond the form and to the substance of the sought-after remedy.").

Plaintiff frames his requested relief as solely equitable, but the relief he seeks is monetary in substance. Specifically, he seeks "a constructive trust on the *flat fees* charged on the Mandate amounts and an Order granting restitution of the ill-gotten *flat fees* imposed on the Mandates, disgorgement of Defendants' *ill-gotten gains* and any other equitable relief as the Court deems just and proper." AC at 21 (emphases added). The relief Plaintiff seeks is the reimbursement and refund of the flat fees he paid to Defendants for his YES account. Because such relief is monetary in nature, the three-year statute of limitations governs Plaintiff's fiduciary duty and aiding and abetting claims. *See, e.g.*, *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 666–67 (S.D.N.Y. 2007) ("[P]laintiff's claim for damages based on allegedly excessive fees charged in violation of [defendant's] fiduciary duty would also be time-barred."); *Shak*, 156 F. Supp. 3d at 479–80 ("Plaintiffs may not overcome the

---

statute of limitations is not in dispute; and/or the court engages in no analysis of the issue. Notably, the New York Court of Appeals case cited by *Golden Pacific Bancorp* states, "We have held that the choice of the applicable Statute of Limitations depends on the substantive remedy which the plaintiff seeks." *Loengard v. Santa Fe Indus., Inc.*, 70 N.Y.2d 262, 266 (1987).

fundamentally monetary nature of the recovery they seek by recasting it as a bid for restitution and a constructive trust."); *see also Access Point Med.*, 963 N.Y.S.2d at 43–44 (noting disgorgement usually arises in actions brought by the Securities and Exchange Commission to recover ill-gotten gains to compensate *third parties*, not the agency itself).[21]

The Court cannot determine whether the three-year statute of limitations expired before the filing of this action, however, because the Amended Complaint fails to make clear when Plaintiff's claims accrued. The parties agree that Plaintiff's fiduciary duty claim accrued when the claim became enforceable, "i.e., when all elements of the tort can be truthfully alleged in a complaint"—which is, ordinarily, when damages are sustained.[22] *IDT Corp.*, 12 N.Y.3d at 140; *see* MTD Brief at 15 (citing *IDT Corp.*, 12 N.Y.3d at 14); Opp. Brief at 14 (same). Defendants assert that this occurred in October 2017, when Plaintiff first paid the fee assessed on his YES account. MTD Brief at 15–16 (citing account statements submitted with MTD Brief). While Plaintiff does not appear to dispute this date, it does not "appear[] on the face of the complaint," the documents incorporated into the Amended Complaint by reference, or other matters the Court may take judicial notice of at this juncture. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008). Nor is it clear that Plaintiff admits that this is the date on which his breach of fiduciary duty claim accrued. Opp. Brief at 18–19 (first stating, in the context of the fiduciary duty claim, that "*[a]ccording to Defendants, Plaintiff first paid flat fees . . . in October 2017,*" and then stating, in the context of the unjust

---

[21] While Plaintiff quotes language in cases that describe "restitution" and "disgorgement" as equitable remedies, Plaintiff does not cite to cases interpreting New York law. *See, e.g., Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1942–46 (2020) (interpreting federal securities statute to permit disgorgement in SEC civil enforcement action); *Webb v. RLR Assocs., Ltd.*, No. 03 Civ. 4275 (HB), 2004 WL 555699, at *2 (S.D.N.Y. Mar. 19, 2004) (analyzing whether plaintiff is entitled to jury trial based on relief sought); *Swan Brewery Co. v. U.S. Trust Co.*, 143 F.R.D. 36, 41 (S.D.N.Y. 1992) (same).

[22] Plaintiff does not directly respond to Defendants' representation that the aiding and abetting claim also accrues on the same date. MTD Brief at 15; *see also Royal Farms, Inc. v. Glob. Tropical Fresh Fruit Corp.*, No. 04-CV-4615 (ERK), 2006 WL 8437472, at *2 (E.D.N.Y. Feb. 14, 2006) ("Aiding and abetting a breach of fiduciary duty has the same statute of limitations as the underlying claim of breach of fiduciary duty.").

enrichment claim, "[i]n this case, the first payment of a flat fee was in October 2017" (emphasis added)).  Therefore, Defendants' statute of limitations defense cannot be resolved at this stage.[23]

### E.      Leave to Amend

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).  Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  The Court grants Plaintiff leave to amend, with certain limitations.

Plaintiff has already amended the complaint once, after service of Defendants' first motion to dismiss.  On the other hand, Plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court.  "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Plaintiff did not request leave to amend if the Motion to Dismiss is granted, much less identify how the deficiencies in the Amended Complaint might be cured.  The Court is not obligated to grant leave to amend where there has been no such request for one.  *See Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) (citing *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)) ("[A] district court has no obligation to grant leave to amend *sua*

---

[23] Plaintiff asserts an equitable estoppel argument.  "When a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must specifically plead facts that make entitlement to estoppel plausible (not merely possible)." *Thea*, 807 F.3d at 501.  Because the Court cannot find that Plaintiff's claim appears untimely on the face of the complaint, it does not need to address Plaintiff's equitable estoppel argument at this juncture.

*sponte*.")  The Court may also deny leave to amend where Plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."), *aff'd*, 619 F. App'x 34 (2d Cir. 2015); *see also TechnoMarine S.A*, 758 F.3d at 505–06 (affirming denial of leave to replead where plaintiff already amended once following a motion to dismiss and failed to identify how it would cure its pleading deficiencies).

Nonetheless, the Court grants Plaintiff leave to replead, to the extent Plaintiff may seek to remove himself from the scope of SLUSA preclusion—for example, by no longer asserting claims on behalf of a putative class. *See In re Kingate I*, 784 F.3d at 135 n. 9 ("A dismissal under SLUSA would not be with prejudice, barring a plaintiff from filing a new, non-covered action asserting the same claims against the same defendants.").  Having found that Plaintiff's action is not necessarily barred by the statute of limitations on the face of the complaint, the Court cannot conclude, at this juncture, that any amendment would be futile.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED without prejudice.  Dkt. No. 50.  Within twenty-one days, Plaintiff may file a third amended complaint to cure the deficiencies articulated in this opinion.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 50.

SO ORDERED.

Dated:  March 29, 2024
New York, New York

GREGORY H. WOODS
United States District Judge